SAMUEL B. RAYMOND, County Treasurer, *et al.*

*v.*

THE HARTFORD FIRE INSURANCE COMPANY *et al.*

*Opinion filed April 16, 1902.*

1. INSURANCE—*two per cent tax on premiums received is a tax, and not a mere license fee.* The two per cent tax imposed by the act of 1899 (Laws of 1899, p. 265,) on foreign insurance companies other than life, is both a license fee for doing business in this State and a State tax having the effect of superseding the tax on net receipts provided for by the act of May 31, 1879, and all personal property taxes except as is otherwise provided by the terms of the act itself.

2. CONSTITUTIONAL LAW—*section 1 of article 9 of the constitution construed.* The second clause of the first section of article 9 of the constitution, providing that the legislature may tax certain occupations and interests in such manner as it shall from time to time direct by general law, is not confined to occupations only, but applies also to property interests which may be included in the method of taxation adopted by the legislature, which method may be different from that prescribed by the first clause.

3. SAME—*two per cent tax of foreign insurance companies is not a commutation of a State tax.* The two per cent tax on gross premiums received by foreign insurance companies, required by the act of 1899 to be paid to the insurance superintendent, is not a mere collection of some supposed equivalent for taxes legally due the State nor a commutation of State taxes, but is itself a State tax levied in a different manner than under the general Revenue law.

4. SAME—*sections 9 and 10 of article 9 of constitution considered.* Section 10 of article 9 of the constitution makes it incumbent on the legislature to require that all taxable property within the municipal corporations shall be taxed for the payment of their debts, such taxes to be uniform with respect to persons and property therein; and section 9 requires the same rule of uniformity to be observed in respect to corporate taxes.

5. SAME—*legislature cannot release property from municipal taxes.* Under sections 9 and 10 of article 9 of the constitution the legislature cannot exempt from municipal taxation any corporation or individual, or the property of such, within the municipality, nor can the legislature commute a municipal tax for a State tax.

6. SAME—*two per cent insurance tax act of 1899 is unconstitutional.* The act of 1899, (Laws of 1899, p. 265,) which levies a two per cent tax upon the gross amount of premiums received by foreign insurance companies other than life, is unconstitutional, in that its effect is to release such corporations from the payment of local taxes except as to real estate.

APPEAL from the Circuit Court of Cook county; the
Hon. E. F. DUNNE, Judge, presiding.

The only question presented by this record is the con-
struction and constitutionality of the act entitled "An
act providing for a tax on gross premium receipts of in-
surance companies and associations other than life," ap-
proved April 19, 1899, in force July 1, 1899, (Hurd's Stat.
1899, p. 1042,) which is as follows:

"*Be it enacted by the People of the State of Illinois, rep-
resented in the General Assembly:* That every insurance
company or association, other than life, organized or in-
corporated under the laws of any other State or nation,
and every other insurance company, other than life,
whose charter may be owned, or a majority of whose
stock may be controlled, or whose business shall be car-
ried on in the interest or for the benefit of any insurance
company or association incorporated under the laws of
any other State or nation, shall at the time of making
the annual statements as required by law, pay to the
insurance superintendent as taxes, two per cent of the
gross amount of premiums received by it for business
done in this State, including all insurance upon property
situated in this State, during the preceding calendar year.
The payment of said taxes shall be a condition precedent
to the privilege of doing business in this State.   Upon
compliance with the laws of this State and the payment
of said taxes, the insurance superintendent shall issue
the annual certificate as provided by law, and the taxes
provided in this act shall be in full for all taxes, State
and local, against such corporations or associations, ex-
cept taxes on real estate, and such reciprocal tax as is
required by law: *Provided,* where fire insurance companies
pay into cities and villages, that have an organized fire
department, a tax of two dollars or less, on every $100
of premiums received by the company, in such city or
village, said amount shall be deducted from the amount

to be paid to the insurance superintendent by provisions of this act."

The appellees, the Hartford Fire Insurance Company and the Home Insurance Company of New York, filed their bill in the circuit court of Cook county to restrain the appellants, Henry H. Fuller, collector of the town of South Chicago, and Samuel B. Raymond, treasurer and *ex officio* collector of Cook county, from collecting or attempting to collect a tax levied by the taxing authorities of the town of South Chicago on the personal property of the appellee companies in the city of Chicago.  The bill sets out compliance with all the State laws prescribing the terms upon which foreign insurance companies may transact business in this State, due license from the State and payment of the tax required in the above act of 1899, the Hartford company paying $7050.47 and the Home company $3881.92 as such tax.  The bill further sets out that the sum of $73.66 is unlawfully assessed against the Hartford company on its personal property in the city of Chicago, to-wit, office furniture, safe, printing press and supplies, for State, county, city, school, library, drainage and South Park taxes, on a valuation of $5000 and an equalized assessment of $880; and likewise the sum of $7.39 against the Home company on its personal property of a similar character, valued at $500 and assessed at $88.  A demurrer to the bill was overruled, and the appellants, abiding by their demurrer, have appealed to this court from the decree enjoining the collection of the tax.

EDWIN W. SIMS, County Attorney, and FRANK L. SHEPARD, Assistant County Attorney, for appellants:

The act of 1899, read in connection with the provisions of the constitution and the general law, means that complainants, as foreign corporations, are required to pay the sum specified to the State for the license or special privilege conferred upon them by the State to carry

on a general insurance business in the State, and should not be construed to mean that they are thereby exempted or relieved from the payment of general taxes levied upon an assessment by valuation. Const. art. 9, sec. 1, clause 2; Hurd's Stat. 1899, chap. 73, sec. 30; *Home Ins. Co.* v. *Swigert*, 104 Ill. 653; *Walker* v. *Springfield*, 94 id. 364; *People* v. *Thurber*, 13 id. 554; *Hughes* v. *Cairo*, 92 id. 339.

The act of 1899, in so far as it purports and to the extent that it seeks to exempt complainants' property from the payment of general taxes levied upon an assessment by valuation, is unconstitutional and void, being in conflict with section 1 of article 9 of the constitution, in respect to the provisions therein enjoined, that taxes shall be levied by valuation, by the persons and in the manner prescribed by general law. Const. art. 9, sec. 1; *Homestead Ass.* v. *Keith*, 153 Ill. 609; *Crane* v. *West Chicago Park Comrs.* id. 348.

The act of 1899, in so far as it exempts complainants' property from the payment of general taxes to the city of Chicago, county of Cook, etc., levied for the payment of the indebtedness of such municipal corporations, is in direct conflict with the constitution, and is therefore to that extent unconstitutional and void. *High School District* v. *Lancaster County*, 60 Neb. 147; Const. art. 9, sec. 10; *St. Louis Bridge Co.* v. *East St. Louis*, 121 Ill. 238.

CARY & WALKER, and BARGER & HICKS, for appellees:

The act of July 1, 1899, selects, for the purpose of taxation, a recognized class of corporations, and levies a uniform, specific property tax peculiar to that class, based on gross earnings. It further provides that such taxes shall be in full of all taxes except taxes on real estate and reciprocal taxes. By virtue of the appropriation of such tax levy to State purposes such act commutes all other taxes of such class for county, town and municipal purposes, except taxes on real estate and reciprocal taxes. Cooley on Taxation, (2d ed.) 592, 595, 572.

Under the authority granted by sections 1 and 2 of article 9 of the constitution of 1870, the legislature may, by general law, levy a specific form of property tax upon any recognized class of individuals or corporations, if uniform as to such class; and it may also provide that such tax shall be in lieu of all other forms of taxation that might otherwise be charged to such class. *Porter* v. *Railroad Co.* 76 Ill. 561; *Hughes* v. *Cairo*, 92 id. 339; *Sterling Gas Co.* v. *Higby*, 134 id. 557; *Coal Run Coal Co.* v. *Finlen*, 124 id. 666; *Insurance Co.* v. *Swigert*, 104 id. 653; *Homestead Ass.* v. *Keith*, 153 id. 609.

The right of the State to appropriate for State purposes a specific tax, levied uniformly throughout the State, to the exclusion of any interest of the public or municipal corporation therein, is not prohibited by sections 3, 6, 9 and 10 of article 9 of the constitution. These sections are to be interpreted in the light of the following principles:

It is a fundamental principle of taxation that the legislature holds exclusively the sovereign power, except as limited by constitutional provision, of levying, collecting and distributing all taxes. The public or municipal corporation acquires its right to tax only by delegated authority. Cooley on Taxation, (2d ed.) 61, 142, 329.

Between the legislature and its creature, the public or municipal corporation, there can be no reciprocity of stipulation. Therefore, any power to tax delegated to a municipal corporation by the legislature may be re-called at pleasure. *Mt. Pleasant* v. *Beckwith*, 100 U. S. 514; *Meriwether* v. *Garrett*, 102 id. 472.

The legislature may appropriate for State purposes a specific tax levied upon a designated class, and commute to such class a further payment of local taxes. *Railroad Co.* v. *McLean County*, 17 Ill. 290; *Neustadt* v. *Railroad Co.* 31 id. 484; *Hunsaker* v. *Wright*, 30 id. 146; *Chicago* v. *Sheldon*, 9 Wall. 50; *Supervisors* v. *Campbell*, 42 Ill. 490; *Wetherell* v. *People*, 116 id. 631; *Railway Co.* v. *Chicago*, 178

id. 339; *New Orleans* v. *Houston,* 119 U. S. 265; *Parmelee* v. *Chicago,* 60 Ill. 267.

The public corporation, in levying and collecting taxes, acts as the agent of the State, and is vested with no property interest in such taxes. *People* v. *Power,* 25 Ill. 169; *Supervisors* v. *Springfield,* 63 id. 66; *Logan County* v. *Lincoln,* 81 id. 156; *Wetherell* v. *Devine,* 116 id. 631; *Harris* v. *Supervisors,* 105 id. 445.

Mr. JUSTICE CARTER delivered the opinion of the court:

The grounds upon which appellants base their argument for a reversal of the decree in this case are, first, that by a proper construction of the act of 1899, set out in the statement of the case, the tax of two per cent therein required to be paid to the State superintendent of insurance is to be regarded only as a license fee to be paid as a condition precedent to the exercise by foreign insurance companies of the privilege of doing business in this State, and is not intended to relieve the company of the burden imposed upon all alike,—that is, the payment of general property taxes; and second, if it cannot be so construed then the act is unconstitutional.

It is sufficient to say, that the plain language of the statute itself is in direct conflict with the first view presented.    It provides that "the taxes provided in this act shall be in full for all taxes, State and local, against such corporations or associations, except taxes on real estate, and such reciprocal tax as is required by law." It seems clear that the purpose of the act is to require such corporations to pay the two per cent on their gross receipts *as taxes.*    Indeed, it expressly so provides; and when paid they are to be in lieu of all other taxes whatsoever, except as therein mentioned.    The two per cent is both a license fee for doing business in this State and a State tax, and evidently has the effect, if the act is constitutional, of superseding the tax on net receipts provided for by the act of May 31, 1879, (Hurd's Stat. 1899,

p. 996,) and all personal property taxes, except as otherwise provided in the act itself, notwithstanding the later act does not contain any repealing clause.

The second question then arises,—is the act of 1899 in conflict with the constitution? The appellants insist that it violates each of the following sections of article 9 of the constitution of 1870:

"Sec. 1. The General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property —such value to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise; but the General Assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, inn-keepers, grocery keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, vendors of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates."

"Sec. 3. The property of the State, counties and other municipal corporations, both real and personal, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation; but such exemption shall be only by general law." * * *

"Sec. 6. The General Assembly shall have no power to release or discharge any county, city, township, town or district whatever, or the inhabitants thereof, or the property therein, from their or its proportionate share of taxes to be levied for State purposes, nor shall commutation for such taxes be authorized in any form whatsoever."

"Sec. 9. The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise. For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes; but such taxes shall be uniform in respect to persons and property, within the jurisdiction of the body imposing the same.

"Sec. 10. The General Assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, but shall require that all the taxable property within the limits of municipal corporations shall be taxed for the payment of debts contracted under authority of law, such taxes to be uniform in respect to persons and property, within the jurisdiction of the body imposing the same." * * *

The contention that the statute violates the first section above set out is, that the second clause of that section does not relate to property taxes strictly so called, but to taxes which the legislature may authorize to be levied on different kinds of business or occupations, and that such taxes were intended by the framers of the constitution to be in addition to, and not in lieu of, the tax on property by valuation provided for in the first clause, and that although the legislature has the power to impose the tax authorized by the act of 1899 on foreign insurance corporations as a class, for the privilege of doing business in this State, it has no power to relieve them of their personal property tax imposed by the general Revenue law, enacted under the first clause. There is no substantial difference between this section of the present constitution and section 2 of article 9 of the constitution of 1848, and this court has held that said second clause is not confined to occupations, but applies also to property interests, which may be included in the method of taxation adopted by the legislature, and which method

may be different from that prescribed by the first clause of said section 1. *Illinois Central Railroad Co.* v. *McLean County,* 17 Ill. 291; *Sterling Gas Co.* v. *Higby,* 134 id. 557; *Coal Run Coal Co.* v. *Finlen,* 124 id. 666; *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 id. 561.

While the legislature may, under the second clause of section 1 and under the second section, adopt a different manner of taxing the subjects or objects of taxation therein provided for, it is a constitutional requirement that it shall be done by general law and so as to be uniform as to the class upon which it operates. The fundamental principles of the constitution governing the exercise by the legislature of the power of taxation appear to be uniformity and equality in the distribution of the burdens of taxation, without taking from the law-making power the discretion to classify and tax occupations, franchises, privileges and business and property interests of certain kinds in a different manner from the manner prescribed for the taxation of property generally, but still requiring the rule of uniformity to be observed as to the class taxed,—that is, as to the constituents of each such class. It is not denied that all members of the class taxed under the statute of 1899 are taxed by a uniform rule, and, therefore, unless sections 1 and 2 are modified by other provisions of the constitution or the statute is in conflict with some other provision, we are of the opinion it cannot be pronounced invalid. But it is the duty of courts to consider all of the provisions of the constitution bearing upon the question at issue, and to so construe them as to give effect to each and all of them. It will be seen from section 2 that it was not intended to limit the power of the legislature to the subjects or objects of taxation enumerated in section 1, but that the power is expressly reserved to that body to tax other subjects or objects "in such manner as may be consistent with the principles of taxation fixed in this constitution." Section 3 limits the power of the legis-

lature to exempt from taxation a certain class or certain classes of property, and it is not, of course, contended that the property of foreign insurance companies falls within such class or classes; and if the property in question which is relieved from local taxes by the statute is thereby exempted from such local taxes within the meaning of the constitution, such statute would be in conflict with said section 3, and void for that reason.

Again, section 6 takes from the legislature the power which it would otherwise have to release or discharge public and municipal corporations therein mentioned, or their inhabitants, or the property within their limits, from their or its proportionate share of *State* taxes, or to authorize commutation for State taxes in any form whatsoever. It will be observed that this section refers to taxes for State purposes only. Then, again, section 9 enforces the rule of uniformity in the levy and collection of municipal taxes throughout the jurisdiction of every municipal corporation, for all corporate purposes, except for local improvements. And section 10 denies to the General Assembly the power to impose taxes for corporate purposes on municipal corporations, or on their inhabitants, or the property therein, but provides that it "*shall require* that all the taxable property within the limits of municipal corporations shall be taxed for the payment of debts contracted under authority of law, such taxes to be uniform in respect to persons and property, within the jurisdiction of the body imposing the same."

In *People* v. *Barger*, 62 Ill. 452, the inhabitants of Shawneetown were exempted by its charter from all State taxes for twenty years, and a sum equal in amount to what the State taxes would produce was required to be levied and collected from the property within the city for the purpose of building a levee to protect the city from overflow, and it was held that the State received nothing for its taxes, and that the inhabitants did not pay a State tax in proportion to the value of their prop-

erty, and the statute was not sustained. The case was distinguished from *People* v. *Miner*, 46 Ill. 384, which authorized a diversion of State taxes after they were collected, while in the *Barger case* the statute released the inhabitants from payment.

In *People* v. *Lippincott*, 65 Ill. 548, the taxes on certain real estate in Randolph county were by a special act of the legislature appropriated and applied for the benefit of the Kaskaskia River Navigation Company for the purpose of making a local improvement, and it was said that the real estate owners really paid no State taxes, but instead thereof paid the amounts of such taxes towards the making of the local improvement. "As the act directs the collector of Randolph county to pay over the State taxes named, as soon as collected, to the treasurer of the Kaskaskia River Navigation Company, to be applied to the improvement of said river, we look upon it as but a form of commuting such State taxes for the payment and appropriation of a sum of money of equivalent amount with such State taxes to this local improvement. * * * To give effect, then, to this act of the General Assembly would, as we conceive, amount to an authorization of the commutation for State taxes allowed by the act, and therein be repugnant to the provision of the constitution above cited, which declares that commutation for taxes, to be levied for State purposes, shall not be authorized in any form whatsoever." The act was declared inoperative by the adoption of the constitution of 1870.

*Ramsey* v. *Hoeger*, 76 Ill. 432, turned upon the provisions of the act of April 16, 1869, in relation to the railroad debts of municipalities, and it was said that the necessary effect of the act was to exempt tax-payers in the counties, townships, cities and towns availing of its provisions, from the payment of so much of the State tax as is appropriated to the particular counties, townships, cities or towns, and the State received no consideration for the exemption granted by the act. The act was held

abrogated by the constitution of 1870, and the question was held to be substantially the same as in *People* v. *Lippincott, supra.*

We do not mean to say that the last clause of section 6, forbidding commutations of State taxes in any form, has no broader significance than the first clause forbidding the release or discharge of any district of the State, or its inhabitants or property, from its or their proportionate share of State taxes, but only that that was deemed a form of commutation and a prevalent evil chiefly intended to be guarded against. (See Debates Const. Conv. 1198.) We are of the opinion, however, that a construction of this section would not be authorized which would permit commutations of State taxes in some other form than the one most prevalent when the constitution was adopted. The power to commute State taxes existed under the constitution of 1848, (*Illinois Central Railroad Co.* v. *McLean County,* 17 Ill. 291,) but that instrument did not contain the express prohibition embodied in the constitution of 1870. This clause forbids commutations of State taxes in any form whatsoever, and it should not be shorn of its meaning and beneficial operation by judicial construction. It was the substance, and not the mere form, of the evil which was intended to be guarded against. But releases and commutations of State taxes, only, are expressly forbidden,—not local taxes. (*Wetherell* v. *Devine,* 116 Ill. 631.) And unless the act of 1899 releases or discharges foreign insurance companies from State taxes or commutes such taxes in some form, it is not obnoxious to this constitutional provision, however it may affect local taxes. Now, if the General Assembly had the power, as we have hereinbefore shown it had, under said second clause of section 1 of the constitution, to tax foreign insurance companies by a different method or plan than is prescribed in the first clause of that section, the adoption of such method or plan would not amount to a commutation of State taxes simply because of such dif-

ference of method or plan.   To so conclude would be to
conclude that the constitution authorized in one section
what it forbids in another.   We are of the opinion that
if there was in the case at bar any commutation it was
of local and not of State taxes, and that the two per cent
paid to the insurance superintendent was paid as State
taxes levied under the second clause of said section 1,
and is not a mere collection or acceptance of some sup-
posed equivalent for taxes legally due the State, and is
not a commutation of State taxes at all, but is itself a
State tax levied in a different manner than by the gen-
eral Revenue law.

The question arises, has the legislature the power to
commute the local taxes levied on appellees' personal
property, without any equivalent tax, or to release appel-
lees from payment of their local taxes upon payment of
the State tax of two per cent on their gross receipts?  As
we have seen, such power is not inhibited by section 6,
which applies only to State taxes.   But it must not be
forgotten that section 10 makes it incumbent on the legis-
lature to require that all taxable property within munici-
pal corporations shall be taxed for the payment of their
debts, such taxes to be uniform in respect to persons and
property therein; and section 9 requires the same rule of
uniformity to be observed in respect to corporate taxes.
The local taxes here sought to be enjoined were municipal
taxes and in part levied to pay municipal debts, and if the
act in question be sustained the rule of uniformity enjoined
by the constitution would be destroyed and a portion of
the property in the corporate limits would no longer be
subject to taxation to pay the corporate debts.  Surely, if
the legislature must, by constitutional mandate, require
that all taxable property within the municipal limits
shall be taxed to pay municipal debts, and that such taxes
shall be uniform in respect to persons and property with-
in the jurisdiction of the municipality, it cannot exempt
or release any corporation or individual, or its property

within its limits, from such tax or commute such tax for a State tax. If it can, then by changing its mode of taxation, and by taxing "brokers, merchants, commission merchants, inn-keepers, grocery keepers, liquor dealers, toll bridges, ferries, insurance. telegraph and express interests or business, vendors of patents, and persons or corporations owning or using franchises and privileges," a large portion of the taxes levied to pay the debts of cities and villages would be rendered illegal and uncollectible and this requirement imposed upon the General Assembly by section 10 would become nugatory. While the act in question does not apply to real estate, but expressly excepts it, thus leaving it to be taxed under other laws, yet if the statute be not limited to personal property used in the business taxed, all personal property in the municipality owned by persons or corporations included in the statute would be relieved of all municipal taxes. While, doubtless, it may be safely said that the General Assembly would never enact laws so unequal in operation and of such a mischievous tendency, still such laws would, if enacted, differ in scope and degree only from the statute now under consideration, and not in character. But the question is one of constitutional power, and if such power is denied altogether by some provision of the constitution it cannot be exercised to any extent.

We do not regard the case of *Illinois Central Railroad Co.* v. *McLean County,* 17 Ill. 291, as in conflict with this. As above said, the express prohibition against commutation of State taxes was not contained in the constitution of 1848, and so far as it was held that the property of the Illinois Central Railroad Company was exempted from taxation for county purposes the question was different from the one here presented. The question here relates to municipalities like cities and villages, and not to counties. In *Wetherell* v. *Devine,* 116 Ill. 631, we held that the power of the legislature over the revenues of a county is not restricted within the same limits as is its power

over the revenues of a city, town or village. "A county is a public corporation, which exists only for public purposes connected with the administration of the State government, and it and its revenues are alike, where no express constitutional restriction is found to the contrary, subject to legislative control." It is seen that section 10 of article 9 has no reference to counties, as did the McLean county case, but is confined to municipal corporations proper; and it may be observed that the results of that case, and the rights of the State and of the railroad company, seem to have been made secure by a separate and special section of the present constitution.

Counsel for appellees cite and quote from many cases which announce the familiar doctrine that municipal corporations are mere creatures of the statutes, which have entire control over them unless limited by the constitution. That doctrine is not controverted, but it cannot be contended, in face of the constitutional provisions referred to and others, that they do not limit the powers of the legislature in such control in many respects. It is easy to see that if legislation of this character be sustained and should continue to be enacted, all uniformity in taxation, especially as affecting municipal corporations, their inhabitants and the property within their limits, and the security of creditors in their reliance upon its revenues derived from taxation of all such taxable property, would be destroyed. It would probably be conceded that if the legislature had passed an act simply exempting the personal property of foreign insurance companies from all local taxation such act would have been void. In *People's Loan Ass.* v. *Keith*, 153 Ill. 609, it was held that such an act was void which exempted the stock and notes of a homestead association from taxation, and the sections of the constitution above set out were referred to. The legislature had the undoubted power to tax these companies on their gross or net receipts, and if it were conceded that it had the power to

commute the local taxes, such power would have to be exercised consistently with the principles fixed by the constitution. In *Cooper* v. *Ash*, 76 Ill. 11, it was said: "Even if it were conceded, which it is not, that the legislature may commute county or local taxes for some other consideration in lieu thereof, such commutation should operate with fairness and uniformity upon the tax-payers of the corporation with which it should be made." (See, also, *Hayward* v. *People*, 145 Ill. 55.) The former act (Hurd's Stat. 1899, p. 996,) provided for the taxation of the net receipts of such companies for all purposes, State, county, town and municipal, and was not subject to the vice which we consider fatal to the act of 1899.

After resolving all doubts in favor of the validity of the statute, we are unable to reconcile it with the provisions of the constitution, and must therefore hold the act in question unconstitutional and void. The act being void, no other law applicable to the taxation of appellees' property or receipts is by it repealed or affected in any way.

The decree will be reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded.*