HENRY YATES, Insurance Superintendent,

*v.*

THE ROYAL INSURANCE COMPANY.

*Opinion filed December 16, 1902.*

1. TAXES—*a tax voluntarily paid cannot be recovered back, although illegal.* The mere fact that the statute imposing a tax is unconstitutional and the tax for that reason illegal, does not authorize recovery of the amount paid, if it was paid voluntarily.

2. SAME—*fact that tax is paid unwillingly does not constitute duress or compulsion.* The fact that a tax is paid unwillingly or with complaint is not of any legal importance, but there must be some degree of compulsion, to which the tax-payer submits with notification of some sort equivalent to a reservation of rights.

3. SAME—*when tax is not paid under duress or compulsion.* The fact that a statute requires the payment by a foreign insurance company of a tax to the insurance superintendent as a condition to its right to continue business, and that the superintendent sent circulars to the company threatening to enforce the law if the tax was not paid, cannot be made the basis of a claim of duress or compulsion, where both the superintendent and the company believed the law valid, and it does not appear that the company paid the tax unwillingly and with a reservation of rights, or that the consequences feared from a refusal influenced the company's action.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

H. J. HAMLIN, Attorney General, and B. D. MONROE, for appellant:

The amount paid by the appellee under the provisions of the act of 1899 was voluntarily paid by it with full knowledge of all the facts, and having been so voluntarily paid cannot be recovered back in any proceeding. *Walser* v. *Board of Education,* 160 Ill. 272; *Elston* v. *Chicago,* 40 id. 514; *People* v. *Miner,* 46 id. 374; *Swanson* v. *Ijams,* 63 id. 165; *Falls* v. *Cairo,* 58 id. 403; *Railroad Co.* v. *People,* 136 id. 660; *Chicago* v. *Bank,* 11 Ill. App. 165; *Union Building Ass.* v. *Chicago,* 61 Ill. 439; *Lyons* v. *Cook,* 9 Ill. App. 543; *Otis* v. *People,* 196 Ill. 542; Dillon on Mun. Corp. (3d ed.) secs.

944-946; Cooley on Taxation, 565; *Railroad Co.* v. *Commissioners*, 98 U. S. 541; *Lamborn* v. *County Comrs.* 97 id. 181.

If appellee did not intend to acquiesce in the provisions of the act and did not intend to voluntarily pay the tax demanded by its terms, it could have enforced the issuance of a license to it by the writ of *mandamus*, or prevented the revocation of the license under which it was conducting business by the writ of injunction, if the act was void and the insurance superintendent insisted upon the enforcement of its provisions. Not having availed itself of the adequate remedies thus afforded it can have no standing in this court for a recovery of taxes paid. *People* v. *VanCleave*, 183 Ill. 330; *Swift* v. *People*, 162 id. 534; *Clock Co.* v. *Kochersperger*, 175 id. 383; *Supervisors* v. *Manny*, 56 id. 160; *Beidler* v. *Kochersperger*, 171 id. 563.

BATES, HARDING & ATKINS, for appellee:

Where the parties are not on an equal footing, but where one of the parties has no choice except to submit to an illegal exaction or discontinue its business and suffer great loss and damage, then the payment of money under such pressure can never be regarded as voluntary, and money so paid can be recovered back. *Bradford* v. *Chicago*, 25 Ill. 349; *LaSalle County* v. *Simmons*, 5 Gilm. 513; *Railroad Co.* v. *Coal Co.* 79 Ill. 121; *Chicago* v. *Sperbeck*, 69 Ill. App. 563; *Beckwith* v. *Frisbie*, 32 Vt. 559; *Swift* v. *United States*, 111 U. S. 22; *Insurance Co.* v. *Herriott*, 109 Iowa, 606; *Atwell* v. *Zeluff*, 26 Mich. 119; *Westlake* v. *St. Louis*, 77 Mo. 47; *Steamship Co.* v. *Young*, 89 Pa. St. 186; *Preston* v. *Burton*, 12 Pick. 13; *Marshall* v. *Snediker*, 25 Tex. 460; *Railroad Co.* v. *Commissioners*, 8 Otto, 541.

Mr. JUSTICE BOGGS delivered the opinion of the court:

On the 19th day of April, 1899, the General Assembly adopted the following act:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That every insur-

ance company or association, other than life, organized or incorporated under the laws of any other State or nation, and every other insurance company, other than life, whose charter may be owned or a majority of whose stock may be controlled, or whose business shall be carried on in the interest or for the benefit of any insurance company or association incorporated under the laws of any other State or nation shall, at the time of making the annual statements, as required by law, pay to the insurance superintendent as taxes two per cent of the gross amount of premiums received by it for business done in this State, including all insurance upon property situated in this State during the preceding calendar year. The payment of said taxes shall be a condition precedent to the privilege of doing business in this State. Upon compliance with the laws of this State and the payment of said taxes, the insurance superintendent shall issue the annual certificate as provided by law, and the taxes provided in this act shall be in full for all taxes, State and local, against such corporations or associations, except taxes on real estate, and such reciprocal tax as is required by law: *Provided*, where fire insurance companies pay into cities and villages that have an organized fire department a tax of two dollars or less on every one hundred dollars of premiums received by the company, in such city or village, said amount shall be deducted from the amount to be paid to the insurance superintendent by provisions of this act." (4 Starr & Cur. Supp. Stat. 1902, p. 710.)

The proviso related to payments made by foreign fire insurance companies to incorporated cities and villages under a then existing act of the General Assembly, approved May 31, 1895, (4 Starr & Cur. Supp. Stat. 1902, p. 228,) which, among other things, provided: "That all corporations, companies and associations not incorporated under the laws of this State, and which are engaged in any city, town or village organized under any

general or special law of this State, in effecting fire insurance, shall pay to the treasurer of the city, town or village for the maintenance, use and benefit of the fire department thereof a sum of not exceeding two per cent of the gross receipts received by their agency in such city, town or village."

The appellee, a foreign insurance company, received as premiums for business done in the State of Illinois during the year 1901 the sum of $374,058.56. Two per cent thereof would equal the sum of $7481.17. It paid during that year to the treasurers of incorporated cities, towns and villages, under the provisions of the said act of 1895, for the benefit of the organized fire departments of such municipalities, the sum of $5891.47, arising as a tax of two per cent on premiums received by it during that period, and in pursuance of the provisions of said act of 1899, on the 2d day of February, 1902, paid to the appellant insurance superintendent the remainder of the total of two per cent on premiums so received, being the sum of $1676.95. The said act of 1899, under which said payment of $1676.95 was made, was in contravention of the guaranties of the constitution of 1870, and therefore void, and was so declared by this court in *Raymond* v. *Hartford Fire Ins. Co.* 196 Ill. 329. The decision of this court that said act of 1899 was nugatory was rendered on the 14th day of April, 1902. The moneys paid by the appellee company to the appellant superintendent on the 2d day of February, 1902, had not been paid to the State Treasurer, and on the 23d day of May, 1902, this an action of assumpsit was instituted in the circuit court of Sangamon county by the appellee insurance company, against the appellant superintendent of insurance, to recover back the sum so paid. This is an appeal perfected by said appellant superintendent from an adverse decision and judgment entered in said action in the said circuit court, on a hearing before the court without the intervention of a jury.

The mere fact that the act under which the money was paid was unconstitutional, and the tax for that reason illegally laid, is not sufficient to authorize an action to recover back the amount paid. This principle has received the assent of the courts and law writers generally. Mr. Cooley, in his work on Taxation, (2d ed. p. 809,) says: "That a tax voluntarily paid cannot be recovered back, the authorities are generally agreed. And it is immaterial, in such a case, that the tax has been illegally laid, or even that the law under which it was laid was unconstitutional. The principle is an ancient one in the common law, and is of general application. Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as the reason why the State should furnish him with legal remedies to recover it back." "Money voluntarily paid to another under a mistake of the law, but with knowledge of all the facts, cannot be recovered back." (18 Am. & Eng. Ency. of Law,—1st ed.—223.) This court has declared this same doctrine in numerous cases, among them being *Elston* v. *City of Chicago,* 40 Ill. 514; *People* v. *Miner,* 46 id. 374; *Swanston* v. *Ijams,* 63 id. 165; *Union Building Ass.* v. *City of Chicago,* 61 id. 439; *Walser* v. *Board of Education,* 160 id. 272; *Otis* v. *People,* 196 id. 542.

Judge Dillon, in his work on Municipal Corporations, (3d ed. sec. 944,) in discussing this question, states the law to be: "Money voluntarily paid to a corporation under a claim of right, without fraud or imposition, for an illegal tax, license or fine, cannot, there being no coercion, no ignorance or mistake of facts, but only ignorance or mistake of the law, be recovered back from the corporation, either at law or in equity, even though such tax, license, fee or fine could not have been legally demanded and enforced." And in section 946: "Where there is no mistake or fraud, a voluntary payment cannot be recovered on the mere ground that the one party was under

no legal obligation to pay and the other had no right to receive. Where the party would recover back taxes which he is under no legal obligation to pay, the payment must be compulsory."

. In *Elston* v. *City of Chicago, supra,* we said (p. 518): "No case can be found, where money has been voluntarily paid with a full knowledge of the facts and circumstances under which it was demanded, which holds that it can be recovered back, upon the ground that the payment was made under a misapprehension of the legal rights and obligations of the party paying."

If an illegal tax is, however, paid under duress or compulsion it may be recovered back. The appellee company contends the statute under which the payment was made declared that the payment of the amount demanded thereunder as for taxes should be a condition precedent to its right to transact its business in the State; that it had established two hundred and ninety agencies in the State and was engaged in transacting a large and profitable business, and that the payment sought to be recovered was exacted under threats on the part of the insurance superintendent that it would be denied the right to continue its business in the State unless the payment was made, and that it made the payment under the pressure of the situation,—not voluntarily, but under duress. It clearly appeared the superintendent of insurance believed the act under which the payment was made was a valid law. Therefore the element of fraud, which might be involved if an illegal tax was collected with full knowledge that the law imposing the tax was invalid, does not enter into consideration.

The question is then presented whether it appeared from the proofs the payment was made voluntarily, or under such circumstances as would constitute duress or compulsion.

It is unmistakable, from the proofs preserved in the record, the appellee company, as well as the appellant

superintendent, believed the act under which the appellee company made the payment to be a valid enactment. The appellee company, as to the circumstances connected with the payment, produced but a single witness, Edward Stanbury, its superintendent of agencies in the State, and no other witness gave testimony in the case on that point. He testified he understood and believed the act was legal, valid and binding, and it appeared from his testimony that the amount sought to be recovered was paid without any question as to the legality of the act, and without objection or protest of any kind or nature. The act purported to substitute the payment by insurance companies of a tax of two per cent upon the gross amount of premiums received for business done in the State for the ordinary mode of collecting taxes upon the personal property of such companies, and provided that the payment of said two per cent on the gross amount of premiums should be in full for "all taxes, State and local, against such corporations or associations, except taxes on real estate and such reciprocal tax as is required by law."

At the time of the adoption of the said unconstitutional act, statutes had been adopted providing the appellee company should be required to pay taxes as follows: (1) A tax upon all personal property owned by it, to be listed and assessed by the local assessors in the county, city, village or district where it carried on its business, in accordance with the provisions of section 13 of the Revenue act; (2) a tax at the same rate of taxation, that should be levied for all purposes upon the net receipts of the company at each agency in the State; (Laws of 1897, p. 179); (3) a tax as prescribed by the ordinances of any incorporated city, town or village, not exceeding two per cent upon the gross receipts of such company in such incorporated city, town or village, for the benefit of the organized fire department of such city, town or village.

It will be observed the provisions of the unconstitutional act direct that any amount paid by such insurance company under the act authorizing incorporated cities, towns and villages to levy and collect a tax, not exceeding two per cent on the gross receipts of the company in such city, town or village, for the maintenance and benefit of the organized fire department of such city, town or village, should be deducted from the amount directed to be paid the insurance commissioner by the provisions of the act, and that the payment of the amount so required to be paid by the act should relieve the company of all liability to pay taxes upon its personal property.    Had the unconstitutional enactment been valid it would also have operated to repeal the act of 1879, providing a tax of two per cent upon the net receipts. (*Raymond* v. *Hartford Ins. Co.* 196 Ill. 329.) The appellee company believed it to be valid and that it displaced the other statutory provisions and relieved it of other taxation, as before mentioned.   It does not appear in the proofs the company regarded the proposed substituted mode of taxation as unjust or oppressive, or that it objected to it, or that it preferred to pay taxes under other modes of taxation.   The unconstitutional act seems clearly the more favorable to the appellee company, and there is nothing in the record to indicate the appellee company thought otherwise.

It seems not inappropriate here to remark that the suit in which it was decided that the act in question was unconstitutional did not arise by reason of the disinclination of the appellee company, or any foreign insurance company, to pay taxes in the way of two per cent upon its premium receipts, but because of the insistence of the authorities of the county of Cook that such companies should be taxed by means of assessment upon their personal property.   Certain foreign insurance companies instituted the suit for the purpose of procuring a decree

enjoining and restraining the officials of Cook county from collecting taxes assessed and levied upon the personal property of the said companies, on the ground the act here under consideration exempted such personal property from taxation, and substituted for that mode of taxation the plan of requiring the payment of two per cent on the premiums received on business transacted in the State. *Raymond* v. *Hartford Ins. Co. supra.*

The unconstitutional act here under consideration declared that payment of the tax therein provided to be paid should be a condition precedent to the right of the insurance company to do business in the State, and it appeared from the evidence as preserved in the record, the appellant superintendent of insurance, on the 16th day of December, 1901, mailed to the appellee company a bill for fees due from it to the department in connection with the filing of the annual statement of the company, and enclosed with such bill a printed circular reminding the company that the act in question required the payment of a tax of two per cent of the gross premiums received by it for business done in the State during the year 1901. The circular contained the following statement: "The law requires these fees and taxes to be paid as a condition precedent to doing business in this State, therefore it is absolutely necessary that drafts be forwarded for the amount due at the time of forwarding your annual statement. No consideration will be given to your annual statement until the fees and taxes are paid." The insurance department also issued a second circular letter, one of which was received by the appellee company on the 27th day of December, 1901. This circular letter contained the same statement as above quoted from the circular of December 16, 1901. Another circular or letter from the appellant superintendent is in the record, but it was not mailed to the appellee company until more than a month after the appellee company had made payment of the amount here sought to be recovered back

by it, and therefore could not at all have influenced the company in making the payment.

Some time previous to the mailing of these circulars, Mr. Stanbury, superintendent of agencies of the appellee company, had an interview with Mr. Yates, the insurance superintendent, and, it is argued, compulsion or duress of payment might well be based on the remarks then made by the appellant superintendent. A careful consideration of the testimony as to this interview discloses that the conversation then had related to the question whether the two per cent tax on the premiums received by the appellee company under the act in question should be paid on premiums on risks which the appellee company had re-insured. The representative of the appellee company contended the two per cent tax should not be computed and paid on premiums received on property insured by the appellee company which premiums the company had paid out to other insurance companies to procure re-insurance on the same property. The proper construction of the act as to premiums on policies on which re-insurance had been effected was the subject of that interview, and we are unable to see that it had any effect to render compulsory the payment of the two per cent tax made by the appellee company some four to six months thereafter. Therefore, that which must be relied on to constitute duress or compulsion is the act itself, and two circular letters issued by the appellant, Yates, of dates, respectively, December 16 and 27, 1901. The two letters but re-produce the provisions and penalties of the enactment, being, in substance, but excerpts from the act, and advise the appellee company that such provisions will be enforced by the department of insurance. It therefore seems clear that if the payments be considered as having been made under compulsion or duress, the duress must be based alone upon the existence of the law and the knowledge that the insurance department would enforce the enactment. The in-

surance superintendent believed the law to be legal and
that he had lawful right to demand payment of the
tax.   The proof is, by the testimony produced from the
witness in behalf of the appellee company, that its rep-
resentatives believed the law to be valid, and we find
nothing in the record to indicate but that it made the
payment for that reason, and also in view of the fact
that the act was regarded as but the substitution of
the mode of taxing the company provided by the act for
the other modes of assessing taxes against the company.

Aside from the insistence that, under a proper con-
struction of the act, the two per cent tax should not be
computed on premiums received by the appellee company
which it had paid to other insurance companies to pro-
cure re-insurance of the same risks, the record herein is
barren of any evidence tending to show that the appellee
company objected to the operation of the law or to the
making of the payment sought to be recovered back.   It
does not appear the appellee company was unadvised of
any fact material to be considered in determining whether
it should make the payment, or that it was mistaken as
to any matter of fact in connection with the transaction.
Its officials in charge of its affairs in the State knew the
provisions of the act made payment of two per cent of
the premiums received by it in the State a condition pre-
cedent to its right to do business in the State, and the
company was notified by the appellant superintendent
these provisions would be enforced by his department.
It also believed the act to be valid, and believed that pay-
ment of the sum of two per cent on its premiums would
relieve it of all liability to pay taxes, State or local, of
every character, except upon such real estate as it might
own in the State.

As we have seen, the mistake under which the appel-
lee company labored as to the legality of the act had
no effect to render the payment otherwise than a volun-
tary payment.   It was not laboring under any mistake of

fact, but under a misapprehension of law. It urged no objection to the enforcement of the act; did not protest against being required to pay, or give any indication that it desired to reserve any rights; nor do we find any evidence in the record to show that it even made the payment unwillingly, except that it contended that under the proper construction of the act the premiums received on risks which were re-insured should not be included in the amount upon which the tax of two per cent should be computed, and that contention was preferred some four months, at least, prior to the time when the payment of the said two per cent fell due to be made under the provisions of the act. While it does appear from the evidence that the appellee company knew the act declared that refusal of the right to transact its business within the State should follow the failure upon its part to pay to the State the said two per cent upon its premiums received, it does not appear that it was unwilling to pay the tax, and that its unwillingness was overcome by the possible consequences of a refusal to pay, or that the consequences of a refusal to pay in anywise operated to influence it to make a payment which, but for the desire to avoid such consequences, it would not have made. The proof disclosed the consequences of refusal to pay and knowledge thereof, but not that such consequences operated to influence the appellee company to make a payment which, but for such consequences, it would have declined to make. We find in the proof nothing to show the unwillingness of the appellee company to pay or that it desired to resist or avoid payment, or that it was influenced to forego such desire by reason of the possible consequences of a violation of the act. "To constitute duress the danger must not only exist, but must be shown to have actually operated upon the mind, and to have constituted the controlling motive for the performance of the act sought to be avoided." *Wilberson* v. *Bishop*, 7 Coldw. 25.

It is entirely consistent with the proof in the case at bar that the appellee company was satisfied with the substitution of the mode of taxation adopted by the act for other modes of levying and collecting taxes from it. It is to be assumed, in the first instance, that all payments of taxes actually made were voluntarily made. "All payments are supposed to be voluntary until the contrary is made to appear. Nor is the mere fact that a tax is paid unwillingly or with complaint of any legal importance, but there must be in the case some degree of compulsion, to which the tax-payer submits at the time but with notification of some sort equivalent to reservation of rights." (Cooley on Taxation,—2d ed.—810.) There is no evidence in the record that the appellee company in any manner indicated that it made the payment with any reservation of its rights, and as we read the record it does not appear the company was unwilling to pay, and paid only because of the coercive or compulsory provision of the act.

The cases of *Scottish Union and National Ins. Co.* v. *Herrish,* 109 Iowa, 606, and *Swift & Co.* v. *United States,* 111 U. S. 23, cases most relied upon by the appellee company, do not at all militate against the conclusion reached and announced by Judge Cooley. In the former of these cases the payment was made under written protest and with express notice that liability to pay was denied and the right to contest the same reserved. In the latter case, which was a suit to recover commissions on proprietary stamps bought of the government, as appears from the opinion, Swift & Co. made repeated protests against the ruling denying them deductions for the commissions, and paid only after re-asserting their claim to the deduction claimed on account of the commissions, and they clearly indicated the reservation of all their rights in the premises. So in *German Alliance Ins. Co.* v. *VanCleave,* 191 Ill. 410, the payments there involved were made after remonstrance and formal protest, and after notice that the pen-

alties of the statute would be enforced if the demands of the insurance department were not complied with.

For the reasons indicated the judgment appealed from is reversed and the cause will be remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*