THE PEOPLE ex rel. Edward G. Zilm, County Collector, Appellant, vs. WILLIAM LEONARD et al. Appellees.

*Opinion filed December 17, 1913.*

1. DRAINAGE—*when a new levy for keeping ditches and drains in repair cannot be made.* A new levy cannot be made by a farm drainage district for the purpose of keeping ditches and drains in repair where there is more money in the hands of the treasurer not otherwise appropriated than is required for any repairs needed.

2. SAME—*when additional assessment is not authorized.* The Farm Drainage act does not authorize a new additional assessment to be levied for the purpose of collecting from certain property owners the money which they have escaped payment of by reason of a former additional assessment being held invalid.

3. SAME—*what is meant by word "credits" in section 26 of the Farm Drainage act.* The word "credits," as used in section 26 of the Farm Drainage act, which provides how special assessments shall be made, has no reference to credits for an illegal tax voluntarily paid, but has reference to the provisions of a prior section authorizing the commissioners to credit land owners with the value of old ditches on their lands which can be advantageously used in whole or in part.

APPEAL from the County Court of LaSalle county; the Hon. A. T. LARDIN, Judge, presiding.

JOHN A. GARLAND, and D. L. DUNAVAN, for appellant.

BUTTERS & ARMSTRONG, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a judgment of the county court of LaSalle county sustaining objections of the appellees to judgment and order of sale of their lands, upon the application of the county collector, for a delinquent drainage assessment.

Appellees are land owners in Union Drainage District No. 1 in the towns of Freedom and Ophir,—a drainage district organized under the Farm Drainage act. An origi-

nal assessment of $10,000 for the construction of the work was levied in 1908 and the work was completed. In September, 1909, the commissioners ordered a second assessment of $2500 spread. All the land owners in the district except appellees paid their part of the assessment, which was about one-half of the total amount of the assessment. Appellees refused to pay it, and by objections, when the collector applied for judgment against their lands, raised the question of the validity of the assessment. Their objections were overruled by the county court, but upon an appeal to this court the judgment of the county court was reversed and the assessment held invalid. (*People* v. *Leonard*, 247 Ill. 466.) Thereafter the cause was re-instated in the county court and by agreement of the parties a judgment was rendered sustaining appellees' objections.

The purpose of making the assessment, as recited in the resolution adopted by the commissioners, was to pay the expenses of certain litigation the district was having with some of the appellees, and perhaps others. On the 21st of October, 1911, the treasurer of the commissioners of the district filed a report purporting to show all receipts and disbursements from the organization of the district to the date of the report. The report showed that the moneys paid out, and a balance said to be due and unpaid for tile, left a deficit of $246.11. On the 4th day of March, 1912, the commissioners adopted a resolution for the spreading of a special assessment of $2500 "to repair and maintain the drainage system and to meet the necessary expenses of said district." It was this assessment appellees objected to.

The objections sustained by the court were, in substance, that the assessment was levied to pay an indebtedness previously incurred; that there was no record showing the necessity for funds to be used in the future; that no reason was shown by the record upon which to base the assessment; that there were ample funds in the treasury to pay indebtedness previously incurred; that the assessment was

not levied for the purpose of making repairs and maintaining the drains, as there were ample funds in the hands of the treasurer not otherwise appropriated to make all needed and contemplated repairs; that the resolution ordering the assessment was insufficient, does not find the levy was necessary for the purposes stated and does not define any lawful purpose for which the money was to be expended; that the levy was an attempt to collect from the objectors the amount of the previous additional levy which was held invalid, without requiring land owners who had paid the invalid assessment to pay any part of the last assessment.

Paragraph 116 of chapter 42 of Hurd's Statutes of 1911 makes it the duty of the commissioners, after the completion of the work, to keep the same in repair, and if they find, by reason of an error in locating or constructing the ditches or from any other cause, the lands are not drained or protected as contemplated or some of them receive partial or no benefit, the commissioners are required to use the corporate funds of the district to carry out the original purpose, to the end that all the lands, so far as practicable, shall receive their proper and equal benefits as contemplated when they were classified, and if sufficient funds are not on hand the commissioners may make a new tax levy. The only record of the need of additional money for repairs is the resolution above referred to, and while the commissioners testified that some repairs were needed, it was not pretended that any such sum as $2500 was required for that purpose. The real reason for levying the assessment, as stated by one of the commissioners in his testimony, was that they had failed to collect from appellees any part of the first additional levy because it was held to be invalid. Before it was so held to be invalid all the land owners except appellees had paid their part of the invalid assessment, amounting, in the aggregate, to $1264.07. It was not the purpose of the commissioners to collect from those land owners any part of the last assessment. They only in-

tended to collect the assessment spread against appellees' property and give the other land owners in the district credit for the amount of their respective assessments without requiring them to pay anything.

The treasurer of the commissioners of the district in making his report did not charge himself with or account for the $1264.07 collected on the previous additional assessment. According to the treasurer's report there was a balance in his hands from the original assessment of $2843.14, against which there was an indebtedness on the tile contract of $3089.25. There was an indebtedness, therefore, for the construction of the work, above the amount of the assessment received to pay for it, of something over $200. It is not claimed that the levy now under consideration was made for the payment of indebtedness incurred previous to making the levy. It was made "to repair and maintain the drainage system and to meet the necessary expenses of said district." The statute only authorizes a new levy for the purpose of keeping the drains and ditches in repair when there are not sufficient funds on hand for that purpose. The proof here shows that there was more money in the hands of the treasurer not otherwise appropriated than was necessary to make any repairs that were needed. The proof further shows that the levy was not made for the purpose of raising money to make repairs, but for the purpose of collecting from appellees the money they had escaped payment of by reason of the previous additional levy being held invalid. From the standpoint of fairness this may well have seemed a desirable end, but we find no authority in the statute for attaining it in that manner.

It has uniformly been held that an illegal tax voluntarily paid cannot be recovered back. (*Yates* v. *Royal Ins. Co.* 200 Ill. 202.) Reliance is placed on paragraph 100 of chapter 42 of Hurd's Statutes of 1911. That section relates to the manner of making a special assessment upon the lands of the district, and provides that "the balance of

tax over credits or of damages or other credits over the tax showing the amount due to the district by each land owner on the separate tracts, or, due to the land owner by the district, shall be set down in final columns." The credits there mentioned have no reference to credits for an illegal tax voluntarily paid. In a prior section it is provided that where a ditch had been previously, in whole or in part, constructed so that it could be advantageously utilized, the commissioners were authorized to estimate the value of such old ditch and allow the owner proper credit for it. It is such credits which are authorized by paragraph 100 to be deducted in spreading an assessment.

We are of opinion the county court was correct in denying the application for judgment. The judgment is affirmed.

*Judgment affirmed.*