(No. 3706— )

RUSSELL JOHNSON, ASSIGNEE OF THE BUD'S SHOE STORE, INC., OF GIBSON CITY, ILLINOIS, FORMERLY A CORPORATION, ORGANIZED AND DOING BUSINESS UNDER THE LAWS OF THE STATE OF ILLINOIS, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 15, 1942.*

LINDLEY, PACEY & PACEY, for claimant.

GEORGE F. BARRETT, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

ECKERT, J.

Bud's Shoe Store, Inc., was incorporated under the laws of the State of Illinois on February 4, 1939. Under date of May 13, 1940, the Secretary of State of the State of Illinois, sent a notice to the corporation, which stated in part as follows: "Under the provisions of 'The Business Corporation Act' of this State, the above entitled corporation owes the State of Illinois a franchise tax of . . . $10.00." Payment of this franchise tax was thereafter made by the corporation and received by the Secretary of State on May 23, 1940. On June 24, 1940, the corporation filed in the office of the Secretary of State a declaration of intention to dissolve the corporation, and on the 29th of June of the same year the corporation was dissolved and a certificate of dissolution issued by the Secretary of State.

Claimant, who was one of the stockholders of the corporation, advanced the money to pay this franchise tax, and has obtained an assignment of the claim from all of the stockholders of the corporation. Claimant alleges that the statement from the Secretary of State was received, and payment of the franchise tax was made, at a time when the stockholders of the corporation were contemplating its dissolution; that when claimant paid the franchise tax, he believed the statement from the Secretary of State was for a franchise tax owing by the corporation for the year beginning July 1, 1939, and ending June 30, 1940, whereas the statement was for a franchise tax for the year beginning July 1, 1940, and ending June 30, 1941; and that claimant did not learn of his error until his attorney received a letter from the Secretary of State of date June 24, 1940, which stated that the franchise tax for the corporation was paid to July 1, 1941. Claimant contends that he paid this tax under a mistake of fact, and that a refund should therefore be made to him.

Respondent has filed its motion to dismiss the claim on the ground that claimant asks a refund for a franchise tax not paid under protest, without objection thereto, and without a request for hearing in accordance with the statute, and that there is no provision in the law for such refund.

The rule is well established in this State that where an illegal or excessive tax is paid voluntarily, with full knowledge of all the facts, the same cannot be recovered in the absence of a statute authorizing such recovery. *Alton Light & Traction Company* vs. *Rose,* 117 Ill. App. 83; *Yates* vs. *Royal Insurance Company,* 200 Ill. 202; *Cooper Kanaley and Company* vs. *Gill,* 363 Ill. 418; *American Can Company* vs. *Gill,* 364 Ill. 254. The rule is the same where such tax is paid under a mistake of law, but where it is paid under a mistake of fact, it is not considered as having been voluntarily paid, and may therefore be recovered.

Although the rule is firmly established by the decisions, the application of the rule to the facts in a particular case has caused the courts considerable embarrassment and difficulty, and the decisions are in many instances conflicting. Payment of franchise tax which is illegal or is in excess of amount due has been held to be payment under a mistake of fact and not voluntarily paid: *Commercial National Bank and Trust Company* vs. *State,* 7 C. C. R. 122; *Fowler Mfg.*

*Co. Ltd.* vs. *State,* 8 C. C. R. 160; *Automatic Recording Safe Company* vs. *State,* 8 C. C. R. 366; *Bartonville Bus Line* vs. *State,* 10 C. C. R. 703; and has been held to be payment not under a mistake of fact and voluntarily paid; *Chicago Foundation Company* vs. *State,* 8 C. C. R. 22; *Mohawk Carpet Mills Inc.* vs. *State,* 8 C. C. R. 37; *Arundel Corporation* vs. *State,* 8 C. C. R. 506; *Western Dairy Company* vs. *State,* 9 C. C. R. 498; *Butler Company* vs. *State,* 9 C. C. R. 503; *Stotlar-Herrin Lumber Company* vs. *State,* 9 C. C. R. 517; *Handy Button Machine Company* vs. *State,* 10 C. C. R. 22; *Orchard Theater Corporation* vs. *State,* 11 C. C. R. 271. Likewise payment of motor license fees in excess of amount due has been held to be payment under a mistake of fact and not voluntarily paid: *Read* vs. *State,* 8 C. C. R. 200; *Foley* vs. *State,* 9 C. C. R. 104; *Miller* vs. *State,* 9 C. C. R. 139; *Parrish* vs. *State,* 9 C. C. R. 140; *Hart* vs. *State,* 9 C. C. R. 202; *Peterson* vs. *State,* 9 C. C. R. 208; *Conder* vs. *State,* 9 C. C. R. 278; and has been held to be payment not under a mistake of fact and voluntarily paid: *Modern Laundry Company* vs. *State,* 8 C. C. R. 36; *Emerich* vs. *State,* 9 C. C. R. 510. Other license fees and taxes have been held to have been paid under a mistake of fact and not voluntarily paid, and refunds made: *Moorman Mfg. Co.* vs. *State,* 8 C. C. R. 106; *Scudder-Gale Grocery Co.* vs. *State,* 8 C. C. R. 719; *Seibert* vs. *State,* 9 C. C. R. 253.

In many of these cases it is impossible to determine how the court found payment to be voluntary or involuntary. It appears, however, that where a corporation paid an excessive franchise tax as a result of its own mistake or error, the tax is considered to have been voluntarily paid, and such payment, resulting from the negligence or inadvertance of the taxpayer, is not made under a mistake of fact, *Western Dairy Company* vs. *State,* supra; and that where the statutes provide a remedy for a taxpayer of which he fails to avail himself, any payment made is considered voluntary. *Butler Company* vs. *State,* supra. Although in some cases, consideration is given to whether error was made by the State or by the claimant, in the Butler case it was pointed out, that, although an erroneous assessment was made by the State without fault of the claimant, the facts relative thereto were as well known to the claimant as to the Secretary of State, and that both were chargeable with knowledge of the law.

In order to determine whether the tax paid in this case was paid under a mistake of fact or of law, it is necessary to consider the Business Corporation Act of this State, under which the corporation was created and governed. Sections 95, 96, 115 and 116 of that Act require every domestic and every foreign corporation authorized to do business in this State to file an annual report with the Secretary of State between the 15th day of January and the last day of February of each year. Section 143 of said Act provides in part as follows:

"Between the first day of March and the fifteenth day of June of each year the Secretary of State shall assess against each corporation, domestic or foreign, required to file an annual report in such year, the franchise tax payable by it for the 12 months' period commencing on the first day of July of such year in accordance with the foregoing provisions, and if it has failed to file its annual report within the time prescribed by this Act, the penalty imposed by this Act upon such corporation for its failure so to do; and shall mail a written notice to each corporation against which such tax is assessed, addressed to such corporation at its registered office in this State, notifying the corporation (1) of the amount of franchise tax assessed against it for the year next ensuing and the amount of penalty, if any, assessed against it for failure to file its annual report; (2) that objections, if any, to such assessment will be heard by the officer making the assessment, on or before the 25th day of June of such year, upon receipt of a request from the corporation; and (3) that such tax and penalty shall be payable to the Secretary of State on the first day of July next succeeding the date of the notice. Failure to receive such notice shall not relieve the corporation of its obligation to pay the tax and any penalty assessed, or invalidate the assessment thereof.

"The Secretary of State shall have power to hear and determine objections to any assessment of franchise tax at any time after such assessment and, after hearing, to change or modify any such assessment. . . .

"All annual franchise taxes and all penalties for failure to file annual reports shall be due and payable on the first day of July of each year. . . ."

This section also provides that in the event the annual franchise tax is not paid to the Secretary of State on or before July 31st of the year in which such tax is due and payable, collection thereof shall be enforced in accordance with the provisions of the Act.

The notice which Bud's Shoe Store Inc. received from the Secretary of State under date of May 13, 1940, was given to the corporation by the Secretary of State in compliance with this statute. Neither the corporation nor the claimant filed any objection with the Secretary of State, nor made any inquiry in regard to the tax assessed, nor made any request for hearing as provided by the statute. Claimant, however, now contends that his failure and the failure of the

corporation in this regard was the result of an error of fact, in that he believed the tax assessed was for the prior year. Claimant and the corporation, however, must both be held to a full knowledge of the statute which provided a complete remedy for the claimant; both are chargeable with knowledge of the law relative to the assessment of this tax, to the duty of the Secretary of State to give the statutory notice, and to the requirement for payment of franchise taxes in advance. Claimant's failure to acquaint himself with the law, and consequently to avail himself of its remedies, can not now be urged as an error of fact. Claimant's mistake was one of law, and his payment must be held to have been voluntarily made.

Claimant further strongly contends, however, that in the absence of a legal or equitable ground for a refund of this tax, an award should be made on the general ground of equity and good conscience. Claimant contends that because the Constitution of the State of Illinois, adopted in 1870, made no provision for payment of claims against the State, and the Legislature itself considered such claims until 1877, when a Commission of Claims was established for that purpose, succeeded in 1903 by the Court of Claims, the intent of the Legislature in creating the court was to authorize payment of all claims thought to be just and equitable, without regard to the State's legal liability. This is a contention with which the court has long been familiar.

In its earlier decisions, as has been frequently pointed out, the court made awards only to claimant's having a legal or equitable claim against the State, and repudiated similar contentions that it was created to make awards regardless of legal liability. *Schmidt* vs. *State,* 1 C. C. R. 76; *Henke* vs. *State,* 2 C. C. R. 11; *Jorgenson* vs. *State,* 2 C. C. R. 134; *Morrisey* vs. *State,* 2 C. C. R. 254; *Looney* vs. *State,* 3 C. C. R. 18; *Gillett* vs. *State,* 3 C. C. R. 95. The court many times heard the contention that the Legislature itself could make awards without regard to a legal or equitable cause of action, and intended the court to do likewise, but held that such was not the legislative intent. Frequently in the earlier cases, claims were denied without prejudice to claimants to seek an award directly from the Legislatures. *Looney* vs. *State,* supra; *Gillett* vs. *State,* supra. The court also held that it had no jurisdiction to fix, allow or disallow expenses incurred in

election contests of members of the Legislature, such right being vested only in the Legislature. *Weber* vs. *State,* 4 C. C. R. 33; *Hay* vs. *State,* 6 C. C. R. 433.

The decisions remained uniform in this regard until 1920, when a claim was allowed on the basis of equity and justice without regard to the legal liability of the State. *Good* vs. *State,* 4 C. C. R. 90. Thereafter, many awards were made on general principles of equity and good conscience; others were denied. It is difficult to determine what guided the court in separating those cases which came within the principle from those which did not.

The inconsistency of the decisions eventually became apparent to the court, and it endeavored to define justice and equity. *Perry* vs. *State,* 6 C. C. R. 81. This, however, proved unsatisfactory, and in 1932, in *Lindsay* vs. *State,* 7 C. C. R. 103, the court denied an award on the ground of equity and good conscience because no gross carelessness or wanton negligence was shown on the part of the respondent. Shortly thereafter, in *Pachesa, et al.* vs. *State,* 7 C. C. R. 123, an award was made on the ground of equity and good conscience, gross negligence being shown on the part of the respondent and no contributary negligence on part of the claimant. From its attempts to limit the broad field of equity and good conscience in the Perry case, the court reached the limitations of the Pachesa case; these were followed in *Miller* vs. *State,* 7 C. C. R. 129; *Cavender* vs. *State,* 7 C. C. R. 199; *Sprague Dairy* vs. *State,* 7 C. C. R. 227; *Connole, et al.* vs. *State,* 7 C. C. R. 232.

In 1933, however, in an exhaustive opinion, (*Crabtree* vs. *State,* 7 C. C. R. 207) the court held, that regardless of the power of the Legislature to pay claims on its own initiative, this court can exercise only such authority and power as has been delegated to it by the Act creating it, and that its jurisdiction is limited to cases in which the claimant would be entitled to redress against the State either at law or in equity, if the State were suable. This decision has since been uniformly followed.

That it is in accord with the legislative intent is demonstrated by the fact that that body from time to time has extended the jurisdiction of the court and the liability of the State, giving the court jurisdiction of claims of State employees under the Workmen's Compensation Act, of claims of officers and enlisted men under the Military-Naval Code,

and making provisions for refunds of various license fees erroneously paid. If the court's jurisdiction were unlimited, such legislation would be unnecessary. The Legislature apparently does not regard the court merely as a court of conscience, but rather as a court established to determine legal and equitable causes of action against the State.

Although it is highly desirable that courts remain flexible, and that the doctrine of stare decisis be not blindly followed, it is also of importance that there be a consistent body of precedent. The purpose of a court in every case is to determine the facts, to determine the law, and to apply the law to the facts. The law must not remain static, but neither must determinations of the law vary from day to day, or from term to term. Under the doctrine of equity and good conscience, followed by this court for a period of years, awards to all intents and purposes were based on the eloquence of counsel, on the influence of claimant, or on the sympathies of the court rather than on sound judicial precedent. This was undesirable from the point of view of the State, from the point of view of the claimants, from the point of view of counsel, and from point of view of the court. It was exactly the situation which the Legislature itself wished to remedy when it established the Court of Claims. It is to the benefit of all concerned that this court follow sound precedents in its decisions, which in turn may be guides for prospective claimants and their counsel.

The Legislature has so far determined that the greatest good to the greatest number of citizens of this State is best served by limiting the jurisdiction of this court to claims founded upon a legal or equitable cause of action against the State. If the Legislature has erred in this respect, arguments of equity and good conscience should be directed to it, rather than to this court.

The motion of the respondent to dismiss must therefore be granted, and claim dismissed.