The Illinois Central Railroad Company v. The County of McLean.

THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant, v. THE COUNTY OF McLEAN and GEORGE PARKE, Sheriff, &c., Appellees.

APPEAL FROM McLEAN.

It is within the constitutional power of the legislature to exempt property from taxation, or to commute the general rate for a fixed sum.

The provisions, in the charter of the Illinois Central Railroad Company, exempting its property from taxation, upon the payment of a certain proportion of its earnings, are constitutional. ·

THIS is a suit in chancery, from McLean county, to enjoin the collection of a tax, assessed by the county assessor of McLean county, upon the money and property of the Illinois Central Railroad Company. It comes to this court by appeal from a decree of dismissal, entered *pro forma*. The decree contains a stipulation, that the only question to be made in the Supreme Court is, whether the property and franchises, attempted to be taxed by the defendants, or any part of them is, in law, liable to county taxation. In case of reversal of the decree of the Circuit Court, the injunction is to be made perpetual.

M. BRAYMAN, J. F. JOY and A. LINCOLN, for Appellant.

S. T. LOGAN, and STUART and EDWARDS, for Appellees.

SCATES, C. J. The question is one of the *power* of the legislature, under the second section of the ninth article of the present constitution, to exempt, or rather to commute, by payment of a gross sum, to be ascertained by a fixed rule of computation, the property of the corporation from the payment of any portion of the taxes authorized to be levied for county purposes. It is contended that the power is restricted to a rule of "*uniformity*," that will compel every owner to pay his due "*proportion*" according to the "*value*" of his "*property*." This is doubtless the general rule intended to be laid down, and is well and clearly repeated in other words, in the fifth section of the same article; and we must consider all the provisions of the constitution together, in ascertaining the true intent and meaning of the convention in laying down the rule.

The policy adopted in taxation has always been one of great delicacy in its exercise and discriminations, and the power one of vital interest to all governments, of whatever form; and we have not been wanting, in the examination and discussion, in

anxious and earnest search after the true interpretation of our own on this subject. And we feel authorized and required, as we believe, from that consideration, to sustain the provisions of the twenty-second section of the act incorporating the plaintiffs ; and that the payments provided for in the eighteenth section of their charter, have been constitutionally substituted under the second section of the constitution, in lieu of the general rule of uniformity and proportion fixed in its first clause.

A superficial examination of the ninth article of the constitution presents apparently obvious difficulties, in sustaining the composition rule prescribed in the charter, as violative of both uniformity and proportion ; and this cause stood over, and a re-argument was ordered, that full discussion and deliberate examination might remove these apparent difficulties.

If the rule of uniformity and proportion was to be taken, not only as a general but a universal and inflexible one, upon all taxable property, its true *spirit* would seem to be violated by any practical exercise of the power given in the last clause of the same section, which authorized various callings and occupations, with franchises and privileges, to be taxed, in addition and without respect to the property already taxed under the rule in the first clause, which may be used by parties in carrying on these callings, occupations and franchises.

" Property " is a term of very large and general import, in wills and various transactions, and we are not prepared to doubt that, in the constitution and the revenue laws, it includes all values, nay, even more than could be claimed by creditors, heirs, legatees, or next of kin, as belonging to an estate.

The *general* rule, then, of the constitution intended to *apportion* the burthen upon the actual appraised value of all *property,* and in a manner which would, as far as may, make its operation " uniform in respect to persons and property within the jurisdiction of the body imposing the same." And had the rule stopped here, there could be little room left for construction. But there are exceptions to it, which show that an inflexible, universal rule was not intended. And it becomes a question how far the legislature may depart from it—in what instances— and whether the present is warranted as one falling within the exceptions. The first exception is to the very basis of the rule itself, for the first section of the ninth article authorizes a capitation tax.

The second section lays down the general rule, and the second exception is contained in the last clause of that section. It provides that " the General Assembly shall provide for levying a a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property ; such

DECEMBER TERM, 1855. 293

The Illinois Central Railroad Company *v.* The County of McLean.

value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise ; but the General Assembly shall have the power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, innkeepers, grocery keepers, toll bridges and ferries, and persons using and exercising franchises and privileges, in such manner as they shall from time to time direct." The third exception is in the sixth section, which provides that " the specifications of the objects and subjects of taxation shall not deprive the General Assembly of the power to require other objects or subjects to be taxed, in such manner as may be consistent with the principles of taxation fixed in this constitution." In laying a tax upon peddlers and others enumerated, and in selecting and taxing other " objects and subjects " not specified, what mode and manner of taxation will " be consistent with the principles of taxation fixed in this constitution ?" It was contended that the tax contemplated upon " peddlers " and others, is in the nature of a poll or capitation. This is not a satisfactory interpretation. The poll is provided—merely arbitrary assessments and discriminations, to throw personal burthens upon the persons engaged in laudable and useful occupations, could not have been the motive or reason for the provision. By examining the original report of this article, as made to the Convention (Convention Journal, 79 to 81), and the various propositions of amendment (pages 214, 215, 221, 222, 226), it will be apparent that the design was not merely to tax the useful professions, or industrious callings which do not need or use property in their prosecution, but those only which held or used but an uncertain or small amount, and those of an useless character, as showmen, jugglers, &c. It was proposed to include " doctors, lawyers, and clerks of the circuit and county commissioners' court," (p. 215) but rejected, evidently showing that the design was not to tax professions merely as such, nor incomes. The whole design, as we apprehend the constitution, was to enable the legislature to make the burthen proportionate, by applying a different rule to these occupations. For peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, inn and grocery keepers, may, and most usually do, carry on large sales and exchanges of property, and at no one time have in possession anything like a fair proportionate amount of property to their annual sales and profits, which could be assessed or taxed. So with toll bridges, ferries, and corporations exercising some of the franchises and privileges, as bankers. Again, showmen and jugglers, with little property, and itinerating, would bear no fair proportion to the amount gained by their arts, with a little trumpery for deception. Some

corporations invest all the capital used by them in taxable sub-
jects, lands, houses, machinery, materials and manufactures from
them; others have a portion, while another class, like mer-
chants and others, is in floating, exchangeable values, in goods,
produce, and bills and notes; and others with little taxable
property, and large but profitable credits.    Power, then, to make
a flexible rule became indispensable to reach and remedy an ine-
quality inseparable from the nature of these circumstances, and
irremediable by a uniform and proportionate rule, assessed on
actual appraisements of visible property.    Therefore, this gen-
eral power to tax these, which, when exercised generally upon
all, or specially upon one corporation, may well commute, esti-
mate, include and compound within the rule of assessment, what-
ever of real or personal property the individual or corporation may
use in the calling, or with the franchise.

Such, we view the rule adopted with the plaintiff, by taking
five per cent. of the gross income, in lieu of all taxes for a period
of six years, as well as for the grants, privileges and franchises
conferred, and after that period expires, to put them upon the
footing of an assessment equal to two per cent. addition to
the five per cent.

If the power is given to discriminate, as we think clearly is
the intention, we have no right to scrutinize its policy, to deter-
mine whether a greater approach to, or degree of, equalization
has been attained by the mode adopted, than would have resulted
from the general rule applicable to the property of persons.

The power, then, to fix upon some other rule than actual ap-
praisement of property, as applicable to the callings, &c., enu-
merated, leaves the mode of assessment and valuation to the
wisdom of the General Assembly, and the question ceases to be
one between the railroad and the county, and becomes one, in
the light in which it has been discussed, between the county and
the State, in relation to the rights of the former to a share of
the revenue so raised, proportioned to the per cent. levied for
*county* purposes.    We do not here intend to discuss the power
and right of the State, to appropriate to State purposes, all the
revenue derived from taxes on peddlers and others enumerated.

It is enough for the purposes of this case, if the legislature had
the power exercised in this case, and if the plaintiffs are exempt
from taxation under the general mode by appraisement, when
they are taxed under a special provision authorized by the lat-
ter part of the second section.    The only restriction upon the
powers contained in the old constitution in this respect, is that
forbidding a legislative, and requiring an actual appraisement.
In other respects the powers would seem to be enlarged, or
rather, those formerly implied, because not forbidden, are now

expressed. Courts will not seek by construction to deny or destroy the essential powers of the legislature, nor hold their acts void in mere cases of doubt.

There is no subject upon which the courts have sustained legislative power with greater liberality of construction than on this of the revenue. And it is needful that they should have a power commensurate with the means required to furnish vitality to the body politic.

Under the old constitution, with provisions very similar to the first clause of the second section, and without any like the last, or like the sixth section, the court held, that an exemption of the State Bank of Illinois from all taxation in consideration of the payment of half per cent. on their capital stock, was valid and constitutional; *State Bank of Illinois* v. *The People*, 4 Scam. R. 303; and the court cite and rely on *The State* v. *Berry et al.*, 2 Harrison N. J. R. 80, where it was held that the property *generally* of a railroad was exempted upon the payment of a certain sum, under a provision " that no further or other tax or impost shall be levied or assessed upon said company." This was again confirmed and followed, on a similar provision in the *Camden and Amboy Railroad Co.* v. *Hellegas et al.*, 3 Harrison R. 11; *the same plaintiffs* v. *the Commissioners of Appeal*, 3 Harris. R. 71, the court again decide, that the payment of a gross sum is not a tax for their franchises, but all their property, and there is no distinction between State and county and township taxes, for every tax is a State tax, and the State appropriates the proceeds to what purposes she pleases. And again in 1845, in *Gardner, Assessor of Jersey City* v. *The State*, 1 Zabriskie R. 557, the court adhere to and approve the former decisions.

A like commutation of the tax by provision of the charter was recognized and enforced in *O'Donnell, President, Yazoo City* v. *Bailey et al., Assignees Commercial Bank of Manchester*, 24 Miss. R. 386. In *Debolt* v. *The Ohio Life Insurance and Trust Co.*, 1 Ohio State R., N. S., 569, the court deny the power of the legislature to surrender the power of taxation to a company as an exemption, but hold that they may tax the property of corporations as they do others, from time to time. They construe the sixtieth section of the general banking law of 1845, which provided for banks paying semi-annually six per cent. on the profits after deducting expenses and losses, and which was declared to be " in lieu of all taxes to which such company or the stockholders thereof, on account of stock owned, would otherwise be subject," not to be a contract, but to be subject to repeal and alteration by the legislature, and other taxes or modes of assessment may be adopted.

Courts will not intend any provisions of the kind to curtail, abridge or suspend the power of regulating the tax laws, and changing the rate or mode unless clearly expressed and ·so intended.    So a bonus paid by a company on obtaining its charter, will not be construed as an agreed tax or in lieu of taxes. If so, it would be void under the bill of rights in the constitution of Maryland.    But the corporate property and shares in the Baltimore and Ohio Railroad Company were exempted from taxation by the act of 1826, and that exemption was sustained. *Mayor and C. C. of Baltimore* v. *Balt. and Ohio R. R. Co.*, 6 Gill. R. 288.

Pennsylvania and Massachusetts hold railways exempt from taxation, upon the ground that they are public works, established by public authority, like canals, turnpikes and highways. *Inhabitants of Worcester* v. *The Western Railroad Corporation*, 4 Metcalf R. 564 ; *Railroad Company* v. *Berks County*, 6 Barr. R. 70 ; and so of other works. *Schuylkill Bridge Co.* v. *Frairley*, 13 Serg. and Rawl. R. 422 ; *Leheigh Coal and Navigation Co.* v. *Northampton County*, 8 Watts and Serg. R. 334.    But I know of no other State which extends this immunity upon this ground.

But an express exemption upon paying a school tax and making a road, was sustained in the cases of *Gordon and Cheston* v. *The Appeal Tax Court*, 3 How. U. S. R. 133.

In Arkansas the constitution requires a rule of equality, and forbids a discrimination between different species of the same kinds, selected for taxation.    *Stevens et al.* v. *The State*, 2 Arkans. R. 291 ; *Pike* v. *The State*, 5 Arkans. R. 204.    Such is the rule settled by this court in *The President and Trustees of Jacksonville* v. *McConnel*, 12 Ill. R. 138.

But this principle is not violated, by the levy of a local tax upon a particular district, for local public uses.    *Shaw* v. *Dennis*, 5 Gill. R. 405 ; *Kirby* v. *Shaw*, 19 Penn. State R. 258.

Nor does it prevent a discrimination of the subjects and objects of taxation, ( *Sawyer* v. *City of Alton*, 3 Scam. R. 127 ; Article 9, Sec. 6, New Constitution,) but only requires the objects and subjects enumerated in the constitution, and those additional ones authorized to be selected when taxed, to be made to bear their just proportion with all of like kinds within the jurisdiction.

I have presented these decisions to show the constant support given to this vital power of government, not only to levy such taxes as the public exigencies demand, but every disposition the legislature may in their wisdom make, with a view to promote the public good, unless in palpable violation of the constitutional rights of the tax-payer.    The case before us is not

an exemption or immunity from the payment of taxes. Nor do I hold to a power to discriminate and exempt the owners of the same kinds of property provided to be taxed, or a change of the rule of valuation and assessment. But the exemption of the donated lands may be regarded as an exemption of the public property until its sale, or the performance of the conditions which will release the lien of the State. The other property of the company falls within the power of the State, as I have shown, to be assessed by such rule as the legislature may adopt, and in this instance have adopted, for taxing those corporations or persons "using and exercising franchises and privileges." It is for the legislature and not this court to determine the "manner" in which this shall be done. And it may include the property owned or used by them, and is not necessarily confined to a tax upon the franchise or privilege itself.

We are therefore clearly of opinion that the act of the legislature in these provisions is constitutional.

Judgment of the Circuit Court is reversed.

SEPARATE OPINION BY SKINNER, J. By an act of Congress, approved September 20th, 1850, the federal government granted to the State of Illinois certain of the public domain lying within this State, to aid in the construction of a railroad in said act named, and now called "The Illinois Central Railroad." The 5th section of the law making the grant is as follows: " *And be it further enacted,* that if the said railroad shall not be completed within ten years, the said State of Illinois shall be bound to pay to the United States the amount which may be received upon the sale of any part of said lands by said State, the title to the purchaser under said State remaining valid; and the title to the residue of said lands shall re-invest in the United States, to have and to hold the same in the same manner as if this act had not been passed." U. S. Laws of 1850, 466.

The legislature of this State, by an act, approved February 11th, 1851, created the "Illinois Central Railroad Company," and authorized said Company to build and operate the railroad contemplated by the law of Congress. By the act of incorporation, the company undertook, "in consideration of the grants, privileges and franchises conferred," to complete the entire enterprize within six years, and to pay annually to the State a certain per centage of the gross earnings of the railroad.

The act provides for vesting in the company the title to the lands granted by the United States to this State, for the purpose

of enabling the company to build the railroad, and for taking, simultaneously therewith, from the company, a deed of trust to certain persons named on the part of the State, conveying the same property, and also the railroad to be constructed, and all property of the company appertaining thereto, in trust, to secure to the State full performance on the part of the company, and to "indemnify the State of Illinois against all and every claim of the United States government," under the act of Congress making the grant to the State; and provides, that "the lands so selected under said act of Congress, and hereby authorized to be conveyed, shall be exempt from all taxation under the laws of this State, until sold and conveyed by said corporation or trustees, and the other stock, property and effects of said company shall be, in like manner, exempt from taxation, for the term of six years from the passage of this act." Laws of 1851, 61. No question is made in this case as to the due execution of the conveyances and investiture of title contemplated by legislature.

The third section of the ninth article of the State constitution declares that " the property of the State and counties, both real and personal, and such other property as the General Assembly may deem necessary for schools, religious and charitable purposes, may be exempted from taxation." The right therefore of the legislature to exempt the property of the State from any and all taxation is unquestionable. Although the deed of trust vests the legal title to the property of the Illinois Central Railroad Company, in the trustees in the deed named, the conveyance in trust is for the benefit of, and operates as a mortgage to, the State. The State is the party beneficially interested, and occupies substantially the relation of mortgagee, and the company that of mortgagor. A sale of the property for taxes, in pursuance of law, would vest the whole title in the purchaser, and thereby defeat the operation of the deed of trust, and destroy the security it was intended to create in favor of the State. *Atkins* v. *Hinman*, 2 Gil. 449.

I do not doubt that the State, by virtue of the act incorporating the Illinois Central Railroad Company, the conveyance to the company, and the deed of trust from the company, has such an interest in the property of that corporation, as is contemplated by the clause of the constitution before quoted, and that, therefore the legislature may rightfully exempt from taxation the property so conveyed in trust, while the same remains a *subsisting* security to the State.

The act of incorporation evidently contemplates the completion of the railroad within six years from the passage of the act, and that until such completion, the property, the right to tax which

The Illinois Central Railroad Company *v.* The County of McLean.

is in question, should remain free from taxation. The period for performance on the part of the company has not expired, and nothing appears in the record to show that there has been full performance on the part of the company, and that the State is discharged thereby from liability to the United States arising out of the grant to the State. Until such performance, the State has a *subsisting* interest in the property, and the necessities of self-protection incident to sovereignties, as well as to persons, would seem to suggest the propriety and right, in the State, of protecting the security from destruction by sale of the property for taxes, had the constitution been silent upon the subject.

For these reasons I concur in the judgment of this court reversing the decree of the Circuit Court. But I cannot concur with the majority of the court in the construction given to the last clause of the second section of the ninth article of the constitution : " but the General Assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, innkeepers, grocery keepers, toll-bridges and ferries, and persons using and exercising franchises and privileges, in such manner as they shall from time to time direct." I understand this clause as inserted to avoid all question, and as an express declaration of the power of the legislature to tax *franchises* and *privileges* exercised by regulation, of law by some, to the exclusion of others, and which are not common to all the people of the State, without reference to municipal regulation, and as having no sort of reference or application to the *property* of the corporations or persons *exercising* such franchises and privileges. To my mind, this seems too plain for argument.

*Judgment reversed.*

Note by the Reporter.—At December term, 1856, of the Supreme Court of Ohio, the following points were ruled, which, from their similarity to those decided in the foregoing case, it is thought proper to insert here :

*Matheny, for himself and others,* vs. *Golden, Treasurer of Athens county.*

Brinkerhoff, J., delivered the opinion of a majority of the Court. Where the State, by an act incorporating the Ohio University, vested in that institution two townships of land, for the support of the University and the instruction of youth, and, in the same act, authorized the University to lease said lands for ninety-nine years, renewable forever, and provided that lands thus to be leased should forever thereafter be exempt from all State taxes; *Held*—

1. That the acceptance of such leases at a fixed rent or rate of purchase by the lessees, constitutes a binding contract between the State and the lessees.

2. A subsequent act of the legislature, levying a State tax on such lands, is a "law impairing the obligations of contracts," within the purview of the tenth section of the first article of the constitution of the United States, and is, therefore, pro tanto, null and void.

3. Where one of the lessees of such lands sues, as well for himself as for many other lessees of the same lands, holding on like terms with himself, equity will interpose to prevent multiplicity of suits and afford a remedy by injunction.