# CASES

# SUPREME COURT OF ILLINOIS.

## CENTRAL GRAND DIVISION.

### JANUARY TERM, 1880.

---

ILLINOIS CENTRAL RAILROAD COMPANY

*v.*

JOHN W. GOODWIN, Collector, etc.

1. TAXATION *of lands owned by the Illinois Central Railroad Company—exemption.* Section 22 of the charter of the Illinois Central Railroad Company, providing that the lands selected under the act of Congress approved September 20, 1850, which made a grant of lands to certain States named, in aid of the construction of a railroad from Chicago to Mobile, should be "exempt from all taxation under the laws of this State until sold and conveyed by said corporation," has been held to be a constitutional enactment, and is a contract between the company and the State which it is not competent for the legislature to disregard or in anywise impair.

2. These lands may be sold by the company on a credit, and on failure of the purchaser to pay the purchase money the company may, if the contract so provide, declare a forfeiture thereof.

3. So, where the company had entered into a contract of sale of certain of its lands, no conveyance being made, and the purchasers failed to pay the purchase money according to the terms of the contract, whereupon the company declared a forfeiture of the contract of sale, it was *held*, the lands were not subject to taxation. They had not been "sold and conveyed," within the meaning of the 22d section of the charter.

4. If the clause in section 61, chapter 120, Rev. Stat. 1874, which declares that "Illinois Central Railroad lands and lots shall be taxable," after having been sold, "from and after the time the last payment becomes due," was intended to change the rule of taxation of these lands as prescribed in the 22d section of the company's charter, then the General Assembly has transcended its powers in that regard.

Appeal from the Circuit Court of Cumberland county

Mr. B. F. Ayer, and Mr. Chas. H. Wood, for the appellant.

Mr. Chief Justice Walker delivered the opinion of the Court:

The collector of taxes gave notice and made application to the county court for an order of sale of lands for taxes. Appellant filed written objections, and upon the trial it was stipulated between the State's attorney for Cumberland county, who represented the people and the county treasurer, and the counsel for the Illinois Central Railroad Company, as follows:

"1. That the lands above described are a portion of the lands ceded by the State of Illinois to the Illinois Central Railroad Company, by an act of the General Assembly of said State, approved February 10, 1851, entitled 'An act to incorporate the Illinois Central Railroad Company,' and selected under the grant made by the government of the United States to the State of Illinois, by virtue of the act of Congress approved September 20, 1850, entitled 'An act granting the right of way and making a grant of land to the States of Illinois, Mississippi and Alabama, in aid of the construction of a railroad from Chicago to Mobile.

"2. That the said lands had never been conveyed by the said Illinois Central Railroad Company, but had been contracted to be sold by said company to various purchasers upon credit, and that by the terms of the contracts the last payments agreed to be made for the said lands had become due before the assessment of the taxes in question in this suit;

but that the purchasers had failed to make the stipulated payments, and in consequence of such default the said contracts had been declared forfeited, and had been legally canceled by the said Illinois Central Railroad Company before said taxes were assessed, and said company had resumed possession of said lands.

" 3.   That all the proceedings for the assessment of said taxes and the collection thereof had been formal and regular, if it shall be held that said lands are subject to taxation upon the facts appearing in this case."

The following acts of the General Assembly of the State of Illinois were offered in evidence, to-wit:

" An act to incorporate the Illinois Central Railroad Company," approved February 10, 1851, and the act amendatory thereof, approved February 28, 1854, with a stipulation that any other acts relating to said company, or its lands, should be considered in evidence.

The cause was submitted to the court on the objections and stipulation without other evidence.  There was a finding against the lands described in the judgment for $193.48, to the rendering of which judgment the said Illinois Central Railroad Company then and there excepted.

It is claimed that the charter of the company exempts these lands from taxation.   Section 22 provides, " the lands selected under said act of Congress, and hereby authorized to be conveyed, shall be exempt from all taxation under the laws of this State until sold and conveyed by said corporation or trustees," etc.

It has been repeatedly held that this charter forms a ·contract between the State and the company.  *Neustadt* v. *Illinois Cent. Railroad Co.* 31 Ill. 484 ; *Illinois Cent. Railroad Co.* v. *Irvin*, 72 id. 452.   It is also held by these cases, and the case of *Illinois Cent. Railroad Co.* v. *McLean County*, 17 Ill. 291, that this section is constitutional and binding.   And by a separate section of the constitution of 1870 (Rev. Stat. 1874, p. 81,) it is provided that no contract, obligation or liability

of this company to pay any money into the State treasury, nor
any lien of the State upon or right to tax property of the com-
pany in accordance with the provisions of the charter of the
company, shall ever be released, suspended, modified, altered,
remitted, or in any manner diminished or impaired by legisla-
tive authority, etc. This, in the most unequivocal and emphatic
manner, confirms and prevents any alteration or change in the
charter and amendments relating to the taxation of the
property of the company. It fully confirms the provisions
of the 22d section of the charter. That section is embraced
in the revision of 1874, p. 910, section 309. This section is,
therefore, of binding force and unalterable by legislative
action, and the courts can not do otherwise than enforce it.
To do otherwise would be to violate the obligation of the
contract and to disregard this requirement of the constitution.

The exemption is not simply until the lands shall be sold,
but until they are sold and conveyed. These lands were sold,
but the purchasers failing to pay for them they were forfeited
to and belong to the company. The title, therefore, has never
been out of the company since they were ceded to it by the
State. The company, or the trustees, have never conveyed
them, and hence they are not and never were subject to tax-
ation. If the purchase money had all been paid, or it had
all been due and the contract had not been declared forfeited,
then it may be a different question would have been presented.

The company had the right to sell these lands on credit,
and on a failure by the purchaser to make the payments, the
company have the right, if the contract so provides, to declare
a forfeiture of the contract. *The People* v. *Ketchum*, 72 Ill.
212; *Phelps* v. *Illinois Cent. Railroad Co.* 63 id. 468. These
cases so hold, and we regard the question as settled.

Thus it is seen the legislature has no power to change the
manner of taxing these lands from that fixed in the constitu-
tion and the charter of the company. If section 61, chapter
120, Rev. Stat. 1874, was intended to change the manner of
taxing these lands, the General Assembly transcended its

powers. But if it was only intended to tax such lands as had been sold, and all of the purchase money was due, and the contract of sale was still in force and unforfeited, that would present a different question, not now before the court and consequently not decided.

It follows that the county court erred in rendering judgment for the sale of these lands, and that judgment must be reversed.

*Judgment reversed.*