THE PEOPLE ex rel. James S. Roche, County Treasurer,

v.

THE ILLINOIS CENTRAL RAILROAD COMPANY.

*Opinion filed April 17, 1905.*

TAXES—*when approach to bridge is "railroad track."* An embankment, trestles and railroad tracks, all upon the right of way, continuously and exclusively used by the railroad company as an approach to a bridge over a river crossed by the railroad, are "railroad track" within the meaning of the statute, and can only be assessed by the State Board of Equalization.

APPEAL from the County Court of Alexander county; the Hon. WILLIAM S. DEWEY, Judge, presiding.

This is an application of the county collector of Alexander county to the June term, 1904, of the county court of that county for a judgment against lands, lots and other real estate for taxes due thereon for the year 1903. In the collector's list of delinquent property was the bridge approach of the Illinois Central Railroad Company to the railroad bridge across the Ohio river at Cairo in said county. Said approach was assessed by the county assessor at $250,000.00, and the taxes were extended upon the taxable assessment or valuation of $50,000.00, amounting to the sum of $3542.40. The taxes, thus amounting to $3542.40, were assessed against "the Illinois Central bridge approach," described on the tax books and in the collector's application as follows: "The Illinois Central bridge approach, consisting of 2656 lineal feet of steel viaduct and 5307 lineal feet of trestle, 3255 feet of which is composed of frame bents and the balance of pile bents. The pile trestles are filled in with ground. The above said Illinois Central bridge approach is located in sections 14 and 23, in township 17, range 1 west of the third principal meridian in the county of Alexander."

Appellee filed six objections to the tax so assessed upon its property, the first of which was not passed upon by the

215—12

county court, and the fifth and sixth of which were over-ruled, and the second, third and fourth of which were sustained. Judgment was rendered against the collector and in favor of the appellee, and from such judgment the present appeal is prosecuted.

LANSDEN & LEEK, and ALEXANDER WILSON, State's Attorney, for appellant.

W. W. BARR, and GILBERT & GILBERT, (J. M. DICKINSON, of counsel,) for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The six objections filed by appellee in the county court may be reduced to three: First, that the bridge approach is exempt from taxation under appellee's charter; second, that said bridge approach, if assessed at all, should be assessed by the State Board of Equalization, and not by the county assessor; and, third, that the description of the approach is not sufficient to justify or sustain the assessment. We deem it necessary to consider only the second of these objections in order to dispose of the present appeal.

In consideration of the construction of appellee's road and the payment by it of seven per cent of the gross amount of its receipts or income to the State, appellee has been relieved from payment of all other than State taxes to be assessed as provided for in section 22 of its charter. (Charter of Illinois Central Railroad Co. of February 10, 1851, as found in Private Laws of Ill. 1851, p. 61; *Neustadt v. Illinois Central Railroad Co.* 31 Ill. 484). The first objection, made by appellee in the court below, raised the question whether this bridge approach was exempt from taxation under the provision of appellee's charter, as above referred to. This objection, however, was not passed upon by the county court. Counsel for appellant say in their brief: "That court

declined to pass upon or consider the question of the exemp-
tion of the bridge approach from taxation, but held that, if
subject to assessment and taxation, it must be assessed by
the State board." Counsel for appellee say in regard to this
objection in their brief: "The county court * . * * made
no ruling. on it, * * * and we doubt not this honorable
court will not find it necessary to devote its valuable time to
a decision of a question so unnecessary to a decision of this
case, as viewed by the lower court and counsel for appellee."
It being thus conceded by counsel on both sides that the ob-
jection in relation to the exemption of the property in ques-
tion from taxation under appellee's charter was not passed
upon by the trial court, the validity or invalidity of such ob-
jection will not be here discussed.

The bridge approach in question was assessed by the
county assessor, and not by the State Board of Equalization;
and if the county assessor had no power to make the assess-
ment against the bridge approach, such assessment is void.
If that assessment, as made by the local assessor, was made
by an unauthorized person, then the action of the court be-
low in rendering judgment in favor of the appellee was cor-
rect, independently of the question whether the property was
or was not exempt from taxation by any official or board.
The only question, therefore, to be determined, is whether
the property in controversy was properly assessed by the
local or county assessor.

. The determination of the question thus presented depends
upon the determination of the further question whether or
not "the Illinois Central bridge approach," so assessed, is
railroad track. If the bridge approach comes within the des-
ignation of "railroad track," it could only be assessed by the
State Board of Equalization, if assessed at all, and not by
the county assessor. The inquiry, therefore, arises whether
or not the railroad property in question is "railroad track."
Two deeds were introduced in evidence, one dated October
15, 1853, executed by Taylor and Davis, trustees of the

Cairo city property, to the Illinois Central Railroad Company, covering a strip of land 200 feet wide (containing 139.93 acres,) extending from a point in Pulaski county down to a point in said section 23 in Alexander county, and also conveying another tract of 70.56 acres extending from the Mississippi river to the Ohio river, said strip of land connecting with the said last named tract on the north near the center. The other deed is dated April 8, 1889, executed by Taylor and Parsons, trustees of the Cairo trust property, to the Illinois Central Railroad Company, conveying 17.60 acres of land. A plat was introduced in evidence, showing the location of the company's lands described in these two deeds. The plat shows an embankment along the approach and the foot of the slope of the embankment. Upon this embankment is a forty-foot road-bed, and the remainder of the approach is known as the steel viaduct. The plat so introduced represents the original right of way obtained by the deeds and the entire land owned by the company. The top of the embankment, where it connects with the steel viaduct, is shown; and it is all a part of the appellee's right of way. There are two tracks on the embankment, and one track on the steel viaduct connected with the embankment. The entire length of the embankment is 5307 feet and of the steel viaduct 2656 feet. One of the witnesses, who is a civil engineer, says: "The entire embankment and viaduct are on the Central's right of way. * * * A little more than one-half of the embankment is on the land acquired in 1853, and a little less than one-half is on the land acquired in 1889. * * * The entire right of way is literally covered with side-tracks. There is no room for more without buying additional right of way. There are two tracks on the earth embankment, one to and the other from the bridge, and one track on the steel viaduct."

Another witness testified: "The approach leads from the Central's main line to the bridge. * * * The land described in the deed of October 15, 1853, * * * was pur-

chased for right of way to be used for main and side-tracks, and other improvements necessary to the operation of the railroad, and has been used for such purposes ever since. The land in deed of April 8, 1889, * * * was purchased for additional right of way, and to enable the company to construct the Illinois approach to the bridge. * * * Since the purchase of these lands the Central has had the control and occupancy of them. This additional right of way is occupied by the company's tracks and so used. * * * Previous to the construction of the bridge we had an incline here, but it was not able to do the increased business, growing up on the Illinois line. In order to operate that business satisfactorily from the Illinois lines the bridge approach was absolutely indispensable; it was necessary to the successful and profitable operation of these lines through Illinois."

The evidence thus shows quite clearly that the elevated embankment, and steel viaduct connected therewith, which constitute the bridge approach in question, are a part of appellee's right of way, and come within the meaning of what is designated in the statute and decisions of this court as "railroad track." The Revenue law of 1872 divides, for the purpose of assessment for taxation, all real estate belonging to railroad companies into two classes, namely, "railroad track," and "all real estate, including the stations and other buildings and structures thereon, other than that denominated 'railroad track,'" and provides that the first class shall be assessed by the State Board of Equalization. Section 41 of the Revenue act requires the railroad companies to return to the county clerk a statement or schedule, showing the property held for right of way; and section 42 then provides as follows: "Such right of way, including the superstructures of main, side or second track and turn-outs, and the station and improvements of the railroad company on such right of way, shall be held to be real estate for the purposes of taxation, and denominated 'railroad track,' and shall be so listed and valued; and shall be described in the

assessment thereof as a strip of land extending on each side of such railroad track, and embracing the same, together with all the stations and improvements thereon," etc. (*Chicago and Alton Railroad Co.* v. *People,* 98 Ill. 350). The proof in the case at bar shows that the tracks upon the embankment and viaduct above mentioned were erected by appellee upon its right of way, and that appellee, which is a railroad company, did, at the time of the assessment, own and use said tracks as its right of way for the operation of its lines in Illinois. These elevated tracks, and the embankment and viaduct, upon which they are located, are certainly "a superstructure of main, side or second track;" and therefore fall within the designation of "railroad track."

In *Chicago and Alton Railroad Co.* v. *People, supra,* this court held that, under the Revenue law, the exclusive power to assess "railroad track" and rolling stock of railway companies is conferred upon the State Board of Equalization, and, therefore, an assessment of property, used as railroad track, by the local township assessor is void; and it was there held that land held and in actual use by a railroad company for side-tracks, switches and turn-outs must be regarded, within the meaning of the Revenue law, as a part of the right of way of the company, notwithstanding it may have machine shops, depots, round-houses and other superstructures thereon, necessary for the successful use of the road.

The bridge approach here under consideration comes none the less under the designation of "railroad track," because the tracks are elevated. In *Kotz* v. *Illinois Central Railroad Co.* 188 Ill. 578, where the elevation of its tracks by the appellee was under consideration, this court said (p. 581) : "The right of appellee to use its right of way 'for all uses and purposes connected with the construction, repair, maintenance and complete operation of said railroad' was not exhausted so soon as a surface road was built thereon, but is a continuing right, which will enable appellee to change its

plan of construction and operation to meet the demands upon it of a growing business, and the changes wrought by the development of society."

It is true, also, that the embankment and viaduct in question, and the tracks thereon, lead from the main tracks of appellee to a bridge across the Ohio river, but they are none the less within the meaning of "railroad track" on this account. In *Chicago and Alton Railroad Co.* v. *People,* 129 Ill. 571, it was held that a side-track of a railroad company, leading from the main track to a stone quarry, and used for the purpose of procuring stone for ballasting the road, must be regarded as "railroad track" for the purpose of taxation.

In *Anderson* v. *Chicago, Burlington and Quincy Railroad Co.* 117 Ill. 26, it was held that a bridge across a navigable stream, forming the boundary line between this and another State, constructed and used exclusively by a railroad company as a part if its continuous line of railroad, comes within the denomination of "railroad track" for the purposes of taxation, and as such must be assessed only by the State Board of Equalization; and its assessment by the local assessor was there held to be without warrant of law.  If a bridge, constructed and used exclusively by a railroad company as a part of its continuous line of railroad, comes within the denomination of "railroad track," then a bridge approach, such as is the one here under consideration, being used exclusively as a railroad track for railroad purposes, comes within the denomination of "railroad track."   (See also *People* v. *Atchison, Topeka and Santa Fe Railway Co.* 206 Ill. 252).  In *Quincy, Omaha and Nebraska City Railway Co.* v. *People,* 156 Ill. 437, where it appeared that the property in question was used altogether for railroad purposes and was all necessary in the operation and management of the road, it was held that the only legal assessment made of the property was that made by the State Board of Equalization assessing the property of appellant as railroad track, although the main track of the road was all in another State

and its depots, switch yards, shops and side-tracks were in this State and used for railroad purposes by the aid of a leased track; and it was there further held that the assessment made by the local assessor was null and void.

Inasmuch, therefore, as the appellee's bridge approach, with its embankment and viaduct and elevated tracks, comes within the denomination of "railroad track," the county assessor had no power to assess it, whether it is exempt from taxation or not, under appellee's charter. Consequently, the decision of the trial court in sustaining the second objection above mentioned was correct.

Accordingly, the judgment of the county court is affirmed.                                         *Judgment affirmed.*