(No. 13805.—Reversed in part and remanded.)

THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellee, *vs.* LOUIS L. EMMERSON, Secretary of State, *et al.* Appellants.

*Opinion filed October 22, 1921.*

1. RAILROADS—*charter of Illinois Central railroad is a binding contract with the State.* The act of the General Assembly which constitutes the charter of the Illinois Central Railroad Company is a solemn and binding contract both upon the company and the State, which is protected by the State and Federal constitutions.

2. SAME—*substance of contract created by charter of Illinois Central Railroad Company—taxes.* The substance of the contract created by the charter of the Illinois Central Railroad Company is, that in consideration of the building of the charter line roads by the company and the payment of seven per cent of the gross proceeds derived from said lines the State grants to the company its franchise rights, donates to it certain land and covenants to exempt it from all taxation except the taxes specified in the charter.

3. SAME—*Illinois Central Railroad Company acts in dual capacity in operating charter and non-charter lines.* The rights and obligations of the Illinois Central Railroad Company in operating its charter lines are governed solely by the provisions of its charter and subsequent enactments of the legislature not inconsistent therewith, but in operating its non-charter lines its rights and obligations are governed solely by the acts under which it has acquired said lines and subsequent acts that have been or may be enacted.

4. CORPORATIONS—*franchise of corporation is part of its property—taxes.* The franchise of a private corporation, which in its application to a railroad is the privilege of running it and taking fare and freight, is property, and a franchise or privilege tax is a tax upon property.

5. SAME—*franchise tax cannot be levied upon charter lines of Illinois Central Railroad Company.* The franchise tax specified by section 105 of the Corporation act of 1919 (Laws of 1919, p. 340,) cannot be levied on the charter lines of the Illinois Central Railroad Company, as such property is necessarily owned and employed by the company under the grant of its original charter, which provides an exemption from all taxes except those specified therein, and any subsequent act of the legislature levying a tax impairs the obligation of the contract created by said charter.

6. SAME—*non-charter lines of Illinois Central Railroad Company are subject to franchise tax.* The non-charter lines of the Illinois Central Railroad Company, acquired by it under different

acts of the legislature subsequent to the act which constitutes its charter, are subject to the franchise tax under section 105 of the Corporation act of 1919, as said lines are subject to taxation the same as if they were owned by different individuals, and they are not exempt under section 141 or section 142 of said act.

7. SAME—*franchise tax under section 105 of Corporation act is a valid tax.* The franchise tax provided by section 105 of the Corporation act of 1919 is not illegal or unconstitutional nor is it a regulation or interference with interstate commerce, and the State has the right to fix the amount of the tax and the manner of determining it as well as the method of collecting it.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, (CLARENCE N. BOORD, JAMES W. GULLETT, and BENSON LANDON, of counsel,) for appellants.

W. S. HORTON, and J. G. DRENNAN, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The Illinois Central Railroad Company, appellee, filed its bill in equity in the circuit court of Sangamon county against Louis L. Emmerson, Secretary of State, and Edward J. Brundage, Attorney General, appellants, praying that they and their servants and agents be perpetually enjoined and restrained from assessing the franchise tax prescribed by section 105 of the act known as the general Corporation act, approved June 28, 1919, and in force July 1, 1919, against the capital stock of appellee for the year 1920 or for any other year; from commencing a suit or suits, or directing the same to be done, for the forfeiture of the franchise of appellee; from imposing or attempting to impose upon it any of the costs, penalties or interest relating to the assessment and imposition of said tax; from beginning any suit or suits as provided for in the act for the collection or enforcement of the franchise tax or license fee against it; that the court declare the franchise or license

tax to be unlawful as to appellee and in conflict with the act incorporating appellee and in violation of its constitutional rights, and for such other and further relief as equity may require. Appellants filed a demurrer to the bill, which was overruled by the court. Appellants elected to stand by their demurrer. The court thereupon entered a decree that the temporary injunction theretofore issued be made permanent, and that appellants, their deputies, clerks, agents and employees, and their successors in office and their respective employees, and all other parties under their control, be and are, and each of them is, forever enjoined and restrained from assessing any franchise or license tax, or any other tax provided for by said act, against appellee, or from forfeiting or attempting to forfeit its franchise, or from imposing or attempting to impose upon it any of the costs, penalties or interest relating to the assessment and imposition of such tax or any other tax provided for in said act, and from beginning any suit or suits under the act. Appellants appeal directly to this court.

The bill alleges that appellee became a corporation under and by virtue of an act of the General Assembly of this State entitled "An act to incorporate the Illinois Central Railroad Company," which act was approved by the Governor on February 10, 1851, and was duly accepted by the company within sixty days after its passage, and that it has ever since existed, transacted and carried on its business as a corporation under the terms and provisions of the act; that the act of incorporation, among other things, provided for the construction and operation by appellee of lines of railroad in the act described; that it proceeded to and did promptly construct such lines of railroad and has ever since operated and maintained the same; that said lines of railroad so in the act described consisted of a line from the southern terminus of the Illinois and Michigan canal to a point at the city of Cairo, with a branch of the same to the city of Chicago, and also a branch *via* the city

of Galena to a point on the Mississippi river opposite the
town of Dubuque, in the State of Iowa, and that the num-
ber of miles of lines of railroad so in the act of incorpo-
ration described and constructed and since maintained and
operated by the appellee was and is about 705.5. The bill
then sets out in full sections 18 and 22 of said incorpora-
tion act, which are quoted in full in the case of *People* v.
*Illinois Central Railroad Co.* 273 Ill. 220, at page 224 of
the opinion. It also sets forth this provision of the present
constitution of Illinois: "No contract, obligation or lia-
bility whatever, of the Illinois Central Railroad Company,
to pay any money into the State treasury, nor. any lien of
the State upon, or right to tax property of said company
in accordance with the provisions of the charter of said
company, approved February 10, in the year of our Lord
1851, shall ever be released, suspended, modified, altered,
remitted, or in any manner diminished or impaired by legis-
lative or other authority; and all moneys derived from said
company, after the payment of the State debt, shall be ap-
propriated and set apart for the payment of the ordinary ex-
penses of the State government, and for no other purposes
whatever." The bill further alleges that said incorpora-
tion act, including sections 18 and 22, remains and still is
in full force and is a valid and binding contract between
the State of Illinois and appellee and is prohibited from
change by said provisions of the constitution; that said
act empowered and granted the right and franchise of cor-
porate existence and to do business as a corporation, and
that the right and privilege so to exist and do business is
a part of the said contract and included within the grant,
privileges and franchises conferred upon it, and that by
said act and contract appellee was and is exempted from
all taxation of every kind, except as in the act provided.
The bill further alleges that appellee, by authority of sun-
dry general acts passed by the General Assembly, includ-
ing an act entitled "An act to increase the powers of rail-

road corporations," approved June 30, 1885, acquired or leased, and now possesses and operates, certain other lines of railroad within the State of Illinois of a total mileage between 1300 and 1400 miles and which lines extend beyond the State of Illinois; that appellee has so owned or leased, possessed and operated its other lines of railroad for more than ten years last past, but that none of said acts purported to or have in any way changed appellee's franchise or right of corporate existence or to do business in corporate form; that it has ever since its incorporation possessed and held the franchise of being a corporation and the right to do business in corporate form solely by said act of incorporation, and that as such corporation it has possessed, maintained and operated all of said lines of railroad in the State of Illinois and elsewhere. The bill then sets out a number of the sections of the general Corporation act, including sections 105 and 106 thereof, which, in substance, provide that every corporation for profit, including railroads, except insurance companies, heretofore or hereafter organized under the laws of this State, shall pay an annual license fee or franchise tax to the Secretary of State of five cents on each $100 of the proportion of its authorized capital stock represented by business transacted and property located in this State. In ascertaining the amount of the authorized capital stock represented by business transacted and property located in this State, the sum of the business of any foreign or domestic corporation transacted in this State and the total tangible property of such corporation located within this State shall be divided by the sum of the total business of the corporation and the total tangible property of the corporation, wherever situated. The license fee or franchise tax required to be paid by telegraph, telephone, cable, railroad or pipe line companies shall be computed by averaging its per cent obtained as required above with the per cent obtained by dividing the length of such lines of telegraph, telephone,

cable, railroad or pipe line companies actually located in this State by the total length of such telegraph, telephone, cable, railroad and pipe line companies.  It is then averred that if the act of 1919 be construed to apply to appellee it will impose upon its capital stock and property a double tax, contrary to the constitutions of Illinois and the United States, and especially the fifth and fourteenth amendments; that it will deprive appellee of its right of exemption secured to it by the act of incorporation; that the act is unconstitutional because indefinite and uncertain as to the amount of the authorized capital stock made subject to the tax where the corporation does business and has property both within and without the State, and that it is unconstitutional because the tax constitutes a direct burden upon interstate commerce.

Section 18 of appellee's charter expressly recites that in consideration of the grants, privileges and franchises therein conferred upon it for the purposes aforesaid, the company shall, on the first Mondays of December and June in each year, pay into the treasury of the State of Illinois five percentum on the gross or total proceeds, receipts or income derived from its road and branches for the six months then next preceding.  Section 22 expressly provides that all of the lands selected under the act of Congress therein referred to and authorized by the charter to be donated to appellee shall be exempt from all taxation under the laws of Illinois until sold and conveyed by it, and the other stock, property and effects of appellee shall in like manner be exempt from taxation for six years from the passage of the act.  The section then provides that after the six years aforesaid shall expire, some officer of appellee shall list with the State Auditor its stock, property and assets for taxation for State purposes.  It also provides that whenever the taxes so levied for State purposes shall exceed three-fourths of one percentum, such excess shall be deducted from the gross proceeds required to

be paid by section 18. This latter provision is then followed by this positive and unequivocal provision: "And the said corporation is hereby exempted from all taxation of every kind, except as herein provided for." The concluding sentence of this section is, in substance, that the five per cent of gross proceeds and the revenue arising from taxation shall be paid into the State treasury in money and applied to the State's indebtedness until it is extinguished, and that in case five per cent and the taxes so paid do not amount to seven per cent of the gross receipts, then that appellee shall pay into the State treasury the difference, so as to make the whole amount paid at least seven per cent of the gross receipts of the corporation.

This court has declared in numerous cases, both before and since the adoption of said provision of our constitution, in substance, that the act of the General Assembly which constitutes the charter of appellee is a solemn and binding contract upon both appellee and the State and within the protection of the State and Federal constitutions. (*Illinois Central Railroad Co.* v. *Goodwin*, 94 Ill. 262; *Neustadt* v. *Illinois Central Railroad Co.* 31 id. 484; *Illinois Central Railroad Co.* v. *Irvin*, 72 id. 452; *Illinois Central Railroad Co.* v. *People*, 95 id. 313.) The sum and substance of the contract entered into by the State and appellee is, that in consideration of building the charter line roads by appellee and the payment of seven per cent of the gross proceeds or income derived from said lines, in the manner aforesaid, the State granted to appellee its charter and franchise rights, donated to it said land and covenanted to exempt it from all taxation of every kind, except the State taxes aforesaid. The exemption is as broad as language can make it: "The said corporation is hereby exempted from all taxation of every kind, except as herein provided for." If the corporation is exempt from all taxation of every kind, then necessarily its property of every kind, including the grants, privileges and franchises secured

to it by the charter, which are also of value and therefore property, is exempt from taxation of every kind. The corporation cannot be exempt from taxation unless its property is all exempt, as it is the corporation that pays the taxes, if any are to be paid. There may be found a number of State courts of this country that hold that a franchise or privilege tax on a corporation is not a tax upon property. The holding was otherwise in the Supreme Court of the United States in *Gulf and Ship Island Railroad Co.* v. *Hewes,* 22 Sup. Ct. 26, and in *Wilmington and Weldon Railroad Co.* v. *Reed,* 20 U. S. (L. ed.) 568. In the latter case cited it was held by the Supreme Court of the United States that the franchise of a private corporation, which in its application to a railroad is the privilege of running it and taking fare and freight, is property, and of the most valuable kind. The court held that the railroad company was exempt from any payment of taxes assessed upon its franchise and rolling stock. The exemption clause in its charter granted by the State of North Carolina is in this language: "That the property of said company and the shares therein shall be exempted from any public charge or tax whatsoever." The ground of the decision is, that the charter of the railroad company granted by the State of North Carolina constituted a contract between the parties, and that the subsequent legislation of the State providing for the payment of taxes by the railroad company was in violation of that provision of the Federal constitution which declares that no State shall pass any law impairing the obligation of contracts.

In the consideration of the case now before us for decision it is immaterial whether franchise privileges to do business as a corporation be regarded as property or otherwise, as it is the corporation that is exempted from all taxation of every kind, except State taxes. In any view of the case, it cannot be denied that a franchise or license tax must be considered as coming within the designation "tax-

ation of every kind," and if we were permitted to ignore the decisions of the Supreme Court of the United States in passing upon this question, our decision would necessarily have to be that appellee is not subject to the tax in question as to its charter lines and the property necessarily owned and employed by it under the grant of its original charter. The former decisions of this court are entirely in harmony with this view. In *Illinois Central Railroad Co.* v. *McLean County,* 17 Ill. 291, this court said: "Such we view the rule adopted with the plaintiff by taking five per cent of the gross income in lieu of all taxes for a period of six years as well as for the grants, privileges and franchises conferred, and after that period expires to put them upon the footing of an assessment equal to two per cent addition to the five per cent." In *Neustadt* v. *Illinois Central Railroad Co. supra,* it was explicitly held that the payment of the seven per cent of the gross amount of its receipts or income to the State relieved appellee from the payment of all other than State taxes, to be assessed as provided for in section 22 of its charter, and we there said: "The language is plain and explicit. The said corporation is hereby exempted from all taxation of every kind, except as herein provided for.' " In *People* v. *Illinois Central Railroad Co.* 215 Ill. 177, we said: "In consideration of the construction of appellee's road and the payment by it of seven per cent of the gross amount of its receipts or income to the State appellee has been relieved from payment of all other than State taxes, to be assessed as provided for in section 22 of its charter." In *People* v. *Illinois Central Railroad Co.* 273 Ill. 220, it was held that five per cent of the gross income of appellee was paid "not only for the franchise of the road, as that word is ordinarily understood, but in part commutation for all other than State taxes." On page 235 of that decision we further said: "We re-affirm what has already been said more than once by this court, that in consideration of the construction of

appellant's road and the payment by it of seven per cent of its gross income to the State it has been relieved from the payment of all other than State taxes, to be assessed as provided in its charter."

A Federal question is involved in this suit as appellee has expressly challenged the tax in question on the ground that the tax impairs the obligation of its contract with the State and is therefore void. All of the decisions of the Supreme Court of the United States bearing directly upon this proposition necessarily lead to the conclusion that the tax in question is illegal and void because the act does impair the obligation of the contract, and we are bound by those decisions even though we might have viewed the matter in a different light. In *Citizens' Bank* v. *Parker*, 24 Sup. Ct. 181, the question for decision was whether or not the bank was exempt from paying a license tax for carrying on a banking business by an act of the legislature of Louisiana constituting the bank's charter. The bank claimed an exemption under this clause of its charter: "The capital of said bank shall be exempt from any tax laid by the State, or by any parish or body politic under the authority of the State, during the continuance of its charter." The Supreme Court, speaking through Justice McKenna, held that the bank was exempt from the tax, and said: "Whatever the tax may be called, if its final incidence is on the capital it is comprehended in the exemption contained in the charter." We do not deem it necessary to discuss the question further or to cite further authorities, as the question is not difficult and is free from doubt. In the seven per cent that appellee pays on the gross proceeds or earnings from its charter lines the State has received full consideration for all taxes of every kind and character. The people of this State have been well satisfied with their contract with appellee, as has been clearly manifested by the provision of our constitution before quoted, which in substance declares it unalterable in

299—22

any manner, and the legislature cannot, and has never attempted to, in any way modify or change that contract, and in the act in question it disclaims any intention of doing so, as will appear later in this decision.

As to the 1300 or 1400 miles of railroad owned or leased and operated by appellee, as set forth in its bill, we are clearly of the opinion that appellee is not exempt from the tax in question. These railroad lines and property belonging to appellee were not acquired or leased or operated by virtue of its original charter. It is expressly averred by appellee that such lines of railroad within the State of Illinois were acquired or leased by authority of sundry general acts of the General Assembly, including the act to increase the powers of railroad corporations, approved June 30, 1885, and that appellee has owned or leased, possessed and operated such lines of railroad for more than ten years last past, and that none of said acts have purported to in any way change appellee's franchise or right of corporate existence or to do business in corporate form. It is expressly provided in the act of 1885 that all railroads authorized to acquire other railroads thereunder are empowered to purchase and hold such roads in fee simple or otherwise, and to use and enjoy the railroad property, corporate rights and franchises of the company or companies owning such other road or roads upon such terms and conditions as may be agreed upon between the directors and approved by the stockholders owning not less than two-thirds in amount of the capital stock of the respective corporations becoming parties to such purchase and sale. It is further provided in the act that nothing therein contained shall be held or construed to alter, modify, release or impair the rights of this State as now reserved to it in any railroad charter heretofore granted or to affect in any way the rights or obligations of any railroad company derived from or imposed by such charter, and that nothing in the act shall be so construed as to in any manner relieve or discharge

any railway company organized under the laws of this State from the duties or obligations imposed by virtue of any statute now in force or hereafter enacted. It is not claimed or charged by appellee in its bill that any of the acts under which it acquired its 1300 or 1400 miles of road in Illinois in addition to its charter lines exempt it from the payment of any character of tax whatever. It cannot be successfully claimed that its original charter gave it any exemption from payment of any character of taxes or from assuming any duties placed upon it by the statutes under which it acquired its subsequent lines. Its authority to operate the subsequent lines so acquired, and its obligation to the State in holding and operating the same, are just as distinct from its duties to operate its charter lines and its obligations under its charter as if the two kinds of lines were operated by different individuals. As to the subsequent lines appellee necessarily assumed all obligations of its predecessors in title with reference to taxation, and it is exempt from no form of taxation by the State that could be legally imposed against its predecessors if such predecessors were now owning and operating such lines.

Appellee owns and operates its charter and non-charter lines of railroad in a dual capacity. In operating its charter lines its rights, duties and obligations are governed solely by the provisions of its original charter and subsequent enactments of the legislature not inconsistent therewith. In operating its non-charter lines, its rights, duties and obligations with respect thereto are governed solely by the acts under which it acquired them and subsequent acts of the legislature that have been enacted or may be hereafter enacted. This court in *State* v. *Illinois Central Railroad Co.* 246 Ill. 188, said with reference to these new lines of railroad: "In acquiring these branches and lines of railroad appellee did not act or assume to act under its charter powers, but under and by virtue of additional powers created and conferred by the State through general stat-

utes." In *People* v. *Illinois Central Railroad Co.* 273 Ill.
220, this court again said: "The company has a dual
capacity in operating its charter and non-charter lines. It
owns and operates the charter lines under the authority
granted to it by its charter; it owns, possesses and oper-
ates the non-charter lines under the authority granted to
it by general laws." This court has consistently and uni-
formly held that any and all property that appellee has ac-
quired since the grant of its original charter and used for
purposes other than its charter lines is subject to taxation
in the same manner and to as full extent as if owned by
other and different individuals. (*Illinois Central Railroad
Co.* v. *Irvin, supra; In re Swigert,* 119 Ill. 83; *State Board
of Equalization* v. *People,* 229 id. 430.) In the last case
cited it was said: "While it is true that if the legislature,
by an act subsequent to the charter, empowered the com-
pany to acquire and hold property which it was not by
the charter authorized to acquire and hold, such property
would not come within the charter exemption." The Su-
preme Court of the United States makes a similar hold-
ing in *Wilmington and Weldon Railroad Co.* v. *Alsbrook,*
13 Sup. Ct. 72. All the railroad lines of appellee other
than its charter lines within the State, and the property be-
longing to such lines, are necessarily subject to taxation just
the same as if they were owned by other and different in-
dividuals. If this were not so, appellee has in some un-
known and mysterious way been empowered to defeat the
State in taxing such property that is not made satisfactorily
to appear by its bill or by any argument or authority found
in its brief. It is subject to the franchise or license tax in
question just as conclusively as it is subject to any other
tax on such property. The State has a right to fix the
amount of this tax and the manner of determining it, as
well as the method of collecting the same. There is no
ground for the claim that it is illegal or unconstitutional or
that it is a regulation or interference with interstate com-

merce.    *Home Ins. Co.* v. *New York,* 10 Sup. Ct. 593;
*State* v. *Illinois Central Railroad Co. supra.*

Section 141 of the Corporation act of 1919 provides
that nothing therein contained shall be held or construed
to alter, modify, release or impair the right of the State
as now reserved to it in any railroad charter heretofore
granted or to affect in any way the rights or obligations
of any railroad company derived from or imposed by such
charter.    Section 142 thereof provides that nothing therein
contained shall be so construed as to authorize or permit
the Illinois Central Railroad Company to sell the railway
constructed under its charter, or to mortgage the same, ex-
cept subject to the rights of the State under its charter, or
to dissolve its corporate existence or to relieve itself or its
property from its obligations to this State under its charter,
nor shall anything therein contained be so construed as to
in any manner relieve or discharge any railroad company
organized under the laws of this State from the duties or
obligations imposed by virtue of any statute now in force
or hereafter enacted.

It is argued by appellee that the above two sections of
the statute have the effect to exempt appellee and its prop-
erty from the burden of the franchise tax provided for in
section 105 of said act,—the tax in question.    Section 105
exempts insurance companies, only, from the burden of this
tax, and there is nothing contained in either section 141
or section 142 which has the effect to exempt appellee or
its property from the burden of the tax, unless it be as to
property owned, controlled and operated by it under its orig-
inal charter.    The franchise tax in question is not simply a
tax on appellee's mere right to exist as a corporation, but
it is a tax also on its franchise.    It is a tax on its right to
hold the non-charter lines in Illinois and the railroad prop-
erty used in operating the same, and to do a railroad busi-
ness, collect fares, freights, etc., under the general laws of
this State, and, as we have already said, the State has just

as much right to levy that tax on appellee as it would have if such railroad lines and property were owned and operated by another railroad company. (*Atlantic and Gulf Railroad Co.* v. *State of Georgia,* 25 U. S. (L. ed.) 359.) The imposing of this tax upon appellee does not take from it any right guaranteed by its charter. To hold that it is exempt from this tax would be simply holding that the original charter of or contract with appellee had the effect to take from the State its right and power to place a franchise tax upon other property and other franchises of appellee which would be taxable but for such charter. No reasonable construction of appellee's charter can give it such an effect.

The court properly sustained the demurrer to that part of the bill pertaining to the charter property of appellee, as it is not subject to taxation under said act. (*Illinois Central Railroad Co.* v. *Hodges,* 113 Ill. 323.) The other property and railroad lines of appellee are subject to be taxed in the manner provided in the act. The act is not so indefinite and vague that the amount of appellee's property to be subjected to such tax cannot be readily ascertained, as claimed by appellee. By the provisions of its charter it is required to itemize and value its charter property separately for the purpose of ascertaining the seven per cent of its gross earnings payable to the State. No reason is perceived why the correct proportion of its authorized capital stock represented by business transacted and property located in this State and subject to said tax cannot be ascertained by the method pointed out by the act itself.

The court erred in overruling the demurrer to the whole bill. The decree of the court is affirmed as to its holding as to appellee's charter line property and is reversed as to the remaining portion of the bill pertaining to appellee's other property and the cause is remanded, with directions to sustain the demurrer as to the remainder of the bill, as herein indicated.    *Reversed in part and remanded.*